MEYER, APPELLEE, *v.* KLENSCH, APPELLANT.*

(No. 8943—Decided May 15, 1961.)

*Messrs. Kennedy, Moore & Heilker*, for appellee.
*Mr. John C. McCarthy*, for appellant.

LONG, P. J. This is an appeal from a judgment on a verdict of a jury in the Court of Common Pleas of Hamilton County, Ohio. The action is founded on an oral contract. The facts are not too much in dispute, but viewed most favorably for the plaintiff they are as follows:

The plaintiff found out that bids were being taken for an

---

*Motion to certify the record overruled, October 4, 1961.

extension of the Glass Nursing Home of Cincinnati, Ohio. Plaintiff, being a small operator, decided that the job was too big for him. He had procured plans and specifications for the extension of the nursing home and thereupon decided that he would contact builders who were equipped to handle the nursing home job.

Plaintiff consulted the classified section of the telephone directory and picked out the name of the defendant. Plaintiff knew nothing about the defendant except that he was a "big" builder. Plaintiff telephoned defendant's place of business and was told that defendant was out of town, but plaintiff talked with one Al Gilger, who represented that he was one of defendant's "bosses," and that they would be interested in bidding on any operation in excess of $100,000, such as the nursing home job. Plaintiff then took the plans and specifications to the office of the defendant where he met Al Gilger and defendant's brother who also claimed to be one of the "bosses" of defendant's building business. It was at this meeting that plaintiff first suggested that he would like a two per cent commission. It is not clear whether the commission was to be two per cent of the amount bid on the job, but in any event Gilger indicated that it would be all right if they were awarded the contract. Thereafter, defendant's brother stopped at plaintiff's home and picked up an extra copy of the plans and specifications.

It must be noted at this point that the original plans and specifications were substantially amended, and that it was upon the plans and specifications as amended that defendant subsequently made his bid.

Sometime thereafter, and apparently to be sure of his two per cent commission, plaintiff called the defendant himself and, for the first time, indicated directly to defendant the substance of his dealings with Gilger and defendant's brother. Defendant unequivocally indicated that he would not pay a two per cent commission, and that it was "against his principles," and, upon inquiry, Gilger denied that he said that two per cent was all right. Nevertheless, defendant's bid on the job was accepted, and plaintiff instituted the present suit for the two per cent.

It is not necessary for this court to pass upon any of the alleged errors except the failure of the trial court to direct a verdict in favor of defendant, it being our opinion that this is

what the trial court should have done. It is admitted that plaintiff does not rely upon an express contract. As a general rule, an agent cannot bind his principal to a contract entered into by the agent in excess or in derogation of his authority. There is no evidence in this case that the agent had any authority to make this so-called two per cent contract. As a matter of fact, when the defendant was apprised of the fact that plaintiff was claiming such an arrangement with Gilger, defendant specifically repudiated such a deal by telling plaintiff that he (defendant) would not pay a commission to anybody because it was "against his principles."

There are, of course, exceptions to the rule above quoted. First, where the principal holds out his agent and clothes him with apparent authority, the agent may bind the principal where the contracting parties believe that such authority exists. However, there is not a scintilla of evidence of apparent authority, as is evidenced by the fact that plaintiff called defendant on the telephone to see whether he had a contract for a two per cent commission. In our opinion, plaintiff failed to make out a case of implied or apparent authority. The essential element in such a case is that the *principal* must do some act or in some way place his agent in such a position as to appear to have been given authority. It is the conduct of the *principal* and *not* the *agent* which establishes apparent authority. *General Cartage & Storage Co.* v. *Cox*, 74 Ohio St., 284. In the case at bar, there is no evidence that the principal did anything to clothe the agent with such authority. The only evidence adduced at the trial is that of the agent, who, in a conversation with plaintiff, said that he was one of the "bosses." This establishes neither real nor apparent authority.

The other exception to the rule above quoted is where the principal ratifies the unauthorized act of the agent. This would be the only ground upon which plaintiff could possibly recover. To establish ratification, it must be shown by conduct of the *principal*, with full knowledge of the facts, which manifests his intention to ratify the unauthorized transaction. When the defendant learned of the unauthorized acts of his agent, as stated above, he repudiated what the agent had done. It is urged upon us that the making of a bid and the execution of the contract with the nursing home and its performance by defend-

ant, together with his acceptance of its benefits, manifest an intention to ratify. That is not the law. Before ratification can occur, the unauthorized act of the agent must be made known to the principal. After knowledge on the part of defendant, he did not go ahead with the assumption that he would pay the two per cent commission. He repudiated any such arrangement.

Furthermore, the agent denies having made any purported contract for two per cent, and the defendant testified that his agent told him that no such deal was made by the agent. It is interesting to note that plaintiff has offered no contradictory evidence on this point. And furthermore, the bidding in the case was open to everybody, and the only consideration, if it was such, offered by plaintiff to the defendant for the two per cent commission was letting the defendant know that the nursing home had under consideration the enlarging of its building. The job was "too big" for plaintiff, and, for telling defendant about the job, plaintiff wanted "two per cent of the job." As soon as defendant learned about plaintiff's proposition, he refused to have anything to do with it.

The judgment of the court below is, therefore, reversed, and final judgment is rendered in favor of defendant.

*Judgment reversed.*

O'CONNELL and HILDEBRANT, JJ., concur.