ARNETT, Appellant,

v.

MIDWESTERN ENTERPRISES, INC. d.b.a. Midvo Ferrari, Appellee.

[Cite as *Arnett v. Midwestern Ent., Inc.* (1994), 95 Ohio App.3d 429.]

Court of Appeals of Ohio,
Franklin County.

No. 93APE08–1121.

Decided July 26, 1994.

430

*Wood & Lamping, Eric C. Holzapfel* and *Amy L. Tolnitch; Strip, Fargo, Schulman & Hoppers* and *A.C. Strip,* for appellant.

*Greenwald & Associates, Gary D. Greenwald* and *Rodd S. Lawrence,* for appellee.

---

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of James Arnett, Jr. from the June 24, 1993 decision and July 16, 1993 judgment entry of the Franklin County Court of Common Pleas which rendered judgment in favor of appellee, Midwestern Enterprises, Inc., d.b.a. Midvo Ferrari ("Midwestern"). On appeal, appellant asserts the following assignments of error:

"Assignment of Error No. 1: The trial court's judgment is against the manifest weight of the evidence.

"Assignment of Error No. 2: The trial court erred as a matter of law by failing to apply the doctrine of ratification.

"Assignment of Error No. 3: The trial court erred as a matter of law by failing to construe the retail buyer's order under settled rules of contract construction."

Appellant's first and third assignments of error are interrelated and will therefore be discussed together. Appellant asserts that the trial court erred by failing to construe the retail buyer's order as a contract for the purchase of an automobile which was valid and enforceable. Appellant further asserts that the trial court's judgment is against the manifest weight of the evidence. We initially note that a judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579. In addition, under a manifest weight of the evidence test, the court of appeals is guided by the presumption that the findings of the trial court are correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. Thus, if there is competent credible evidence going to the trial court's finding that the retail buyer's order does not constitute a valid and enforceable contract, this court must affirm the judgment of the trial court.

In the instant action, appellant contacted Midwestern in the summer of 1987 regarding the possibility of purchasing a new Ferrari Testarossa. At that time, appellant spoke with Dean McDonald who was an assistant lease manager for Midwestern. As a result of this conversation, McDonald sent literature to appellant. On August 25, 1987, appellant and his then-fiance, Diana Zax, visited

Midwestern and met with Andrew Peabody. Peabody was an assistant sales manager and was a "team leader" of a group of salespersons. Peabody explained to appellant that there was a waiting list for new Testarossas and that a $1,000 deposit was necessary to be placed on the waiting list.[1] Appellant's fiance signed a check for $1,000 and Peabody completed a retail buyer's order. Peabody also represented to appellant that he appeared to be the thirteenth name on the waiting list.

The retail buyer's order in the instant action contains the following language: **"THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE."** Immediately underneath this statement are three signature lines that read "purchaser's signature," "salesperson," and "per." Appellant signed his name on the "purchaser's signature" line and the name Dean McDonald is printed on the "salesperson" line. It is undisputed that Peabody wrote Dean McDonald's name on this line. Peabody testified that he did so in order to indicate that McDonald would be entitled to any commission and not Peabody. The "per" line contains no signature and is blank. The retail buyer's order also contains the following language: "SELLER AGREES TO SELL SAID AUTOMOBILE FOR MONRONI LIST PRICE + ANY DEALER INSTALLED ITEMS + TAX, TITLE, & LICENSE WHERE APPLICABLE BY STATE LAW."

At various points in time, appellant called Midwestern to try to ascertain his position on the waiting list, and was told that he was moving up on the waiting list. Apparently, appellee was selling Ferrari Testarossas outside the order of the waiting list, however, and appellant alleges that had the waiting list been strictly followed, he would have received a Ferrari Testarossa in June 1989. Appellant essentially argues that Midwestern breached its agreement when it sold Ferrari Testarossas to other buyers, who were outside the waiting list. Appellant alleges that Midwestern did so because these buyers were willing to pay more than the Monroni or sticker price. Appellee, on the other hand, points out that some of these Ferrari Testarossas were not factory delivered. John Stewart, who was the sales manager for Midwestern testified that two of the cars were not factory delivered and at least one of the cars was from an auto show. Thus, it was not until April 1990 that the thirteenth person on the waiting list received a *factory-delivered* car. John Stewart also testified that Midwestern offered appellant a Ferrari Testarossa at approximately $5,000 over sticker price

---

1. The dissent asserts that $1,000 was a "substantial amount," and that the cashing of this check constituted an acceptance upon the part of the dealership. Again, there was conflicting evidence as to the purpose of this $1,000 deposit. Given the cost of a new Ferrari Testarossa, we do not find that $1,000 was necessarily a "substantial amount," nor do we find that the trial court erred in its conclusion that this was not determinative of whether or not there was an acceptance by Midwestern.

in April 1990 and that in October 1990, another Ferrari was offered to appellant at the Monroni or sticker price. In both cases, appellant refused these offers. Stewart also explained that there were alternates on the waiting list and that when these alternates were considered, appellant was initially in the fifteenth position on the waiting list, and not the thirteenth. The Ferrari Testarossa that corresponded to the fifteenth position was delivered on or about May 18, 1990.

After a nonjury trial, the court determined that the retail buyer's order at issue in the present case was a one-sided arrangement, because appellant could have canceled at any time without any penalty. Therefore, because appellant was not bound to purchase a Ferrari Testarossa when one became available, the trial court concluded that appellee was likewise not obligated to sell appellant a Ferrari Testarossa. John Stewart testified that no one was obligated to purchase a Ferrari Testarossa when they ascended to the top of the list. In fact, appellant's own testimony is supportive of this finding. In his deposition, appellant testified that he assumed that everyone else's contract was just like his and that when one came to the top of the list, one could chose to take the Ferrari or one could go to the bottom of the list. Appellant also testified that he recognized that this could be a never-ending cycle and that a person could move from the top of the list to the bottom and back to the top again. At trial, appellant testified that he believed he was obligated to buy a car when he reached the top of the list. Appellant further testified that it was his belief that others might move from the top to the bottom of the list, but that such an action "was not part of my contract." Clearly, appellant's testimony is somewhat conflicting and it was within the purview of the trial court to determine what weight and credibility to give to appellant's testimony. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

In order to have an enforceable contract, there must be a meeting of the minds of the parties to the contract. *Noroski v. Fallet* (1982), 2 Ohio St.3d 77, 2 OBR 632, 442 N.E.2d 1302; *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920. A review of the record clearly indicates that no such meeting of the minds existed in the instant action. Appellant argues that the retail buyer's order constituted a binding and enforceable contract, while appellee argues that it was merely an offer. The record is replete with conflicting testimony as to how the waiting list worked, what the purpose of the $1,000 deposit was, and what actual or apparent authority Peabody had to bind Midwestern. The trial court found that there was no meeting of the minds, and that, therefore, the retail buyer's order did not constitute a valid and enforceable contract. The record supports this finding of the trial court.

Furthermore, in construing the retail buyer's order in the instant action, the trial court was required to ascertain the intent of the parties and give

effect to that intent. See *Aultman, supra; Employers' Liability Assurance Corp. v. Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223. A court must give effect to all of the words of a written document. See *Ford Motor Co. v. John L. Frazier & Sons Co.* (1964), 8 Ohio App.2d 158, 29 O.O.2d 379, 196 N.E.2d 335. Thus, the trial court was not free to ignore the language that stated: **"THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE."** Although the dissent argues that there was "nothing in the purchase order or otherwise communicated to appellant that the addition of McDonald's hand-printed signature on the order form was not sufficient to constitute acceptance by the dealer," we cannot agree. As stated previously, the signature on the salesperson line was not *McDonald's signature.* McDonald did not sign his name. Furthermore, there was something to indicate that McDonald's "signature" was not sufficient. Both the "per" line and the underlined, capitalized language requiring the signature of an authorized representative indicate that something more than just a salesperson's signature was required.

In order to give effect to the language which states that the order is not binding until the dealer or his authorized representative accepts the offer, the trial court had to determine whether Peabody, as salesperson, had actual or apparent authority to accept the offer and, therefore, bind Midwestern. Unlike the dissent, the trial court chose to give effect to all of the words of this document.

Whether or not an agent has apparent or actual authority is an issue of fact. See *Agosto v. Leisure World Travel* (1973), 36 Ohio App.2d 213, 65 O.O.2d 339, 304 N.E.2d 910; *Stratso v. Song* (1984), 17 Ohio App.3d 39, 17 OBR 93, 477 N.E.2d 1176. In the instant action, Peabody wrote in McDonald's name on the "salesperson" line. Even if the trial court had found that McDonald had authority to bind Midwestern, McDonald never signed his name to this document. Even if Peabody had authority to bind Midwestern, Peabody never signed his name to this document either. The dissent ignores this fact and asserts that McDonald's "signature" was sufficient to constitute acceptance on behalf of the dealership. However, we find that there was competent, credible evidence to support the trial court's conclusion that McDonald's name did not constitute an acceptance of appellant's offer by Midwestern.

In addition, Peabody testified that he never had authority to and never approved in writing any contract for the sale of a Ferrari Testarossa by Midwestern. He further testified that the sales manager would sign on the "per" line, and that the "salesperson" line was simply there to indicate who was entitled to receive a commission. McDonald also testified that the sales manager had to approve all deals. The sales manager for Midwestern in the instant action was

John Stewart. The affidavit of John Stewart clearly states that salespersons such as Peabody did not have the authority to accept offers and to bind Midwestern to contracts for the sale of vehicles. John Stewart's affidavit also states that every order for a vehicle had to be approved by the sales manager or someone of equal or higher authority before the order could become a binding contract. These individuals signified their acceptance by signing on the "per" line.

The trial court found that Peabody had no management authority and did not have authority to sign or otherwise accept contracts on behalf of Midwestern for the sale of new cars. The trial court further found that such offers were required to be taken to the new car salesman or someone of higher authority to be approved or accepted on behalf of the dealership. This court finds that there is competent, credible evidence to support the trial court's judgment and we will therefore not substitute our judgment for that of the trial court. For all of the above reasons, appellant's first and third assignments of error are overruled.

In his second assignment of error, appellant argues that the trial court should have applied the doctrine of ratification. All of the case law cited to this court by the parties discusses the ratification by a principal of its agent's *unauthorized* acts. See *Campbell v. Hospitality Motor Inns, Inc.* (1986), 24 Ohio St.3d 54, 24 OBR 135, 493 N.E.2d 239; *Meyer v. Klensch* (1961), 114 Ohio App. 4, 18 O.O.2d 261, 175 N.E.2d 870. In the instant action, there is simply no evidence that Peabody took any unauthorized action. Peabody had the authority to take orders and deposits in order to place individuals like appellant on the waiting list. Appellant argues that Peabody had apparent authority to bind Midwestern, that Midwestern ratified his conduct, and that therefore the retail buyer's order constituted a binding contract. As discussed in the previous assignments of error, it was within the trial court's purview to determine whether Peabody acted with apparent or actual authority and whether Midwestern took any action to expressly or impliedly authorize or ratify Peabody's actions. These are all findings of fact for the trial court and this court may not substitute its judgment for that of the trier of fact.

In addition, the express language of the acceptance clause precludes the application of the doctrine of ratification. The acceptance clause clearly states that the retail buyer's order could only become binding if signed by the dealer or its authorized representative. Thus, the trial court did not err in holding that appellant was bound to know that the retail buyer's order was not binding until it was approved by the appropriate party. See *Meekins–Bamman Prestress, Inc. v. Better Constr., Inc.* (Fla.App.1982), 408 So.2d 1071; 77 Corpus Juris Secundum (1952) Sales, Section 28(b). See, also, *Frohn v. Cent. Trust Co.* (App.1946), 47 Ohio Law Abs. 341, 72 N.E.2d 303, holding that the use of the word "per"

followed by a blank, required an authorized signature in order to have an acceptance of the offer, and a resulting contract. As stated by the court in *Frohn*, "the word 'per' followed by a blank, indicates also that some agent's signature was required to validate the signature. This signature was, therefore, incomplete, and was intended by defendant to be so and was ineffective to constitute a signature validating the acceptance of plaintiff's offer." *Id.* at 344, 72 N.E.2d at 304. For the above reasons, we do not find that the trial court erred in its refusal to apply the doctrine of ratification, and appellant's second assignment of error is overruled.

Based on the foregoing, appellant's first, second and third assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

BOWMAN, J., concurs.

WHITESIDE, P.J., dissents.

WHITESIDE, Presiding Judge, dissenting.

Being unable to concur in the conclusion reached by the majority, I must respectfully dissent.

The basic issue in this case is whether there was a contract between appellant and appellee for the purchase of a new Ferrari Testarossa. The evidence can permit no other conclusion but that there was such a contract as a matter of law. There was some question as to the required time of performance by appellee, but no question as to the existence of the contract. Not only is the judgment of the trial court contrary to the manifest weight of the evidence, but it is contrary to the evidence and contrary to law. The majority correctly states that the trial court could not ignore the language that "[t]his order shall not become binding until accepted by dealer or his authorized representative." However, the evidence, even if construed most strongly in favor of defendant, permits no other conclusion but that the order was accepted by the dealer or his authorized representative.

As the trial court found, the purchase contract referred to as "retail buyer's order" does contain the following words in bold face type: **"THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE."** However, there is nothing in the contract indicating how the dealer shall manifest its acceptance of the order. The trial court and the majority erroneously assume that the signature of some person with express authority from the dealer was a requisite for such accep-

tance. This is contrary both to the evidence and the law. As well stated in 17A American Jurisprudence 2d (1991) 195, Contracts, Section 185:

"In the absence of a statute requiring a signature or an agreement that the contract shall not be binding until it is signed, parties may become bound by the terms of a contract, even though they do not sign it, where the assent is otherwise indicated, such as by acceptance of benefits under the contract * * *."

Here, the contract does not require signing by the dealer but, instead, merely requires acceptance by the dealer. There are two manifestations of acceptance by the dealer. First, a signature of a salesperson and, second, negotiation of the deposit check in the amount of $1,000 by the dealer. The order form does not contain a line for dealer's signature but, instead, contains only three signature lines, the first labelled "purchaser's signature"; the second labelled "salesperson"; and the third labelled merely "per," with an indication of "name and title" and "date" under the line. The order is signed by appellant and has the hand-printed signature of a Dean McDonald on the "salesperson" line and nothing on the "per" line.

The majority states that the word "per" automatically requires a signature for acceptance citing *Frohn v. Cent. Trust Co.* (App.1946), 47 Ohio Law Abs. 341, 72 N.E.2d 303, as authority for this erroneous conclusion. However, *Frohn* supports and requires the conclusion reached in this dissent under the circumstances of this case. If the purchase order here reads as the one in *Frohn*, the majority opinion would be correct. However, the *Frohn* purchase order read in pertinent part, as follows:

" ' * * * I/we hereby accept the above proposition
" 'Witness: The Central Trust Company
                    Per:
" 'I/we hereby acknowledge receipt of One Hundred Dollars ($100.00) payment as above provided.
" 'The Central Trust Company
   (Name of Broker)
" 'By Jethro Mitchell.' "

The purchase order in this case, however, reads in pertinent part, as follows:

"Purchaser agrees that this Order includes all the terms and conditions * * * and as of the date hereof comprises the complete and exclusive statement of the terms of the agreement relating to the subject matters covered hereby, and that **THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE.** Purchaser by his execution of Order * * * acknowledges that he has read its terms and conditions and has received a true copy of this order.

"PURCHASER'S SIGNATURE [James R. Arnett, Jr.]
"SALESPERSON [Dean McDonald].
"Per_____
    "(Name and Title)                    (Date)"

The difference from the *Frohn* form is apparent. Here, the only indication of name is that of the salesperson not that of the dealer. Unlike *Frohn*, there are no words indicating acceptance—rather, little more than acknowledgement of receipt of the order.

More important, in *Frohn*, the deposit check *was not cashed*, rather, as stated at 47 Ohio Law Abs. at 344, 72 N.E.2d at 304: "*This check* was never cashed or deposited to the credit of the defendant, but *was returned* by it *to the plaintiff.*" (Emphasis added.) Here, however, the deposit check in the amount of $1,000 was cashed, and the proceeds retained by appellee and no refund was offered, although appellee contends that was its intent. In short, the *cashing of the deposit check constitutes acceptance* of the order in the absence of an express provision to the contrary. This is consistent with *Frohn* and all pertinent law.[2]

Appellee and the trial court rely upon some "secret" internal procedures of appellee as indicative of the necessity of the signing of the order by some authorized person on behalf of defendant dealer. There is no such requirement in the contract, and finding of fact number twenty-two as to the nature of the signature on the salesperson line was strictly internal to appellee dealer, and there is no indication that it was communicated to appellant as a condition precedent to the acceptance of the order. In short, we start with the apparent authority of the salesperson to bind the dealership since there is nothing in the purchase order or otherwise communicated to appellant that the addition of McDonald's hand-printed signature on the order form was not sufficient to constitute acceptance by the dealer. In exchange for this indication of acceptance by the dealer, appellant gave appellee dealer a check in the amount of $1,000 as a deposit.

This check was accepted and cashed by appellee dealer, and such monies are retained to this date, although there is some indication that appellee intended to return the deposit sometime later but, due to some problem with its records, did not tender a return of the deposit to appellant.

Under a contract such as is herein involved, providing that the order is not binding until accepted by the dealer or his authorized representative, accepting and cashing a deposit check in a substantial amount (here $1,000), constitutes an acceptance by the dealer. No other conduct or act of the dealer is required to constitute acceptance of the order. If the dealer did not accept the order, it necessarily follows that it would not accept the deposit and would return the

---

2. Furthermore, as indicated in 77 Corpus Juris Secundum (1952) Sales, Section 28 (cited by the majority) Section 28(c) correctly states:

"[A]cceptance may be shown by the acts, conduct, or words of a party recognizing the existence of the contract of sale."

check, rather than cash it. On the other hand, if the dealer accepted the order, the dealer naturally would cash the deposit check and retain it. That is what was done here and, accordingly, there was an acceptance of the order by the dealer, appellee.

Likewise, there is no definition of "authorized representative" in the purchase order form, and there is no reason that a purchaser making an order would not understand that the person who wrote up the agreement and signed a name on the agreement would manifest such acceptance in the absence of something on the order form to the contrary. Here, there is nothing to the contrary. The evidence permits only one possible conclusion as a matter of law and that is that the order was accepted by appellee dealer. In addition, however, the acceptance of the dealer was reaffirmed by letter from appellee's new car sales manager, dated October 24, 1988, which also outlined the method of payment upon delivery. Even though the letter also solicited the purchase of another vehicle for sale by appellee, this did not detract from the communication indicating that appellee dealer had accepted appellant's order.

As clearly set forth in the trial court's conclusions of law, the error here is one of law in that the trial court assumed that the language on the order form as to acceptance requires an actual signature of someone with express authority to act on behalf of appellee dealer in order to manifest acceptance. This is an error of law. No such signature is required, nor is it required that the person signing have express authority. Apparent authority is sufficient. The form itself implies that the salesperson is sufficient since that is the only express indication of signature on the order form itself.

The "per" line is at best ambiguous, and there is no finding that appellant knew of any secret policy of appellee that the order would not be binding upon appellee dealer unless signed by a particular person, such as the sales manager. There is no such requirement nor even a suggestion in the document itself, the order form. Likewise, the trial court alluded to some refundability policy of appellee to negate the acceptance of the deposit. Not only is such policy not part of the agreement, the order form, but again a secret, apparently uncommunicated, modification by appellee. However, no such refund was made to appellant, even though a refund was made to others when requested. The fact that appellant did not request a refund is significant only to indicate the contract still existed and that appellant did not waive his rights under the contract.

In short, the judgment of the trial court is contrary to law. All three assignments of error should be sustained, and the judgment of the trial court reversed.