DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Pickaway County Court of Common Pleas interpreting a contract that was incorporated into a trust agreement. In its judgment entry, the trial court determined the rights of several parties involved in a transaction consummated through those instruments. Defendant-Appellant Michael Whitaker argues that the trial court erred by: 1) granting Plaintiff-Appellee Eric B. Fenstermaker's motion for declaratory judgment; 2) denying Whitaker's counterclaim alleging a breach of fiduciary duty; 3) granting appellees' motions for attorney fees and costs; and, 4) finding that certain contract provisions involving insurance coverage were satisfied.
We find Whitaker's arguments to be without merit and affirm the judgment of the trial court.
 I. The Agreements
Since 1941, the Metzger family has farmed a certain piece of property located on Rector Road in Pickaway County (the farm). Defendant-Appellee Cooke B. Metzger, whose wife is Defendant-Appellee Jeanne Metzger, grew up on the farm, and his daughter and son-in-law, Defendant-Appellees Kristen and Mel Earich, currently live in the house located on the farm (hereinafter referred to collectively as the Metzgers).
Defendant-Appellant Michael Whitaker's parents formerly owned the farm, and when Whitaker's parents died, he and his sister each inherited a one-half interest in the farm. The Metzgers purchased the entire farm in a private transaction.
Whitaker agreed to sell his one-half interest in the farm to the Metzgers if the sale of the farm included a ninety-day option in favor of Whitaker to repurchase the farm. The transaction was completed, and the Metzgers paid $305,630 to Whitaker and his sister for the farm.
Whitaker failed to exercise his option. Deciding to retain ownership of the farm, the Metzgers secured permanent financing. However, a dispute arose between Whitaker and the Metzgers concerning the option. The parties sought an agreeable solution to the dispute and began negotiations. Plaintiff-Appellee Eric B. Fenstermaker represented the Metzgers during these negotiations.
 A. The Settlement Agreement
As a result of these negotiations, a settlement agreement was consummated on September 27, 1995. The agreement allowed Whitaker to use the farm for purposes of creating a property-exchange transaction that would qualify as a like-kind, tax-free exchange. This would allow Whitaker to avoid paying capital gains tax on the sale of a farm in the state of Oregon. In return, the Metzgers received a release of all potential claims Whitaker may have had against them. The Metzgers also sought a final settlement of ownership of the farm so that they could properly plan future farming operations.
Pursuant to the settlement agreement, Whitaker purchased from the Metzgers a remainder interest in the farm for $211,802. The Metzgers secured a five-year time period, "term certain," during which the Metzgers or their heirs could continue farming operations. The Metzgers also secured an option running from April 16, 1999 to July 15, 1999, to buy back Whitaker's remainder interest for $221,377. The Metzgers were also required to maintain adequate insurance to protect the property and remainder interest as a condition of their option.
 B. The Trust Instrument
On that same day, Whitaker and Fenstermaker entered into the Michael Whitaker Farm Trust (the trust), with Whitaker as grantor and Fenstermaker as trustee. All the parties agreed to the appointment of Fenstermaker as trustee. The remainder interest purchased by Whitaker was also placed in the trust to be held therein until July 15, 1999, or until the Metzgers' exercise of their option, whichever first occurred. Fenstermaker, as trustee, held deeded and recorded title to the remainder interest in the farm.
 II. The Dispute
In March 1999, as the Metzgers' option period was approaching, Whitaker wrote to Fenstermaker suggesting that the Metzgers forego their option and enter into a long-term lease of the farm. The letter stated that the Metzgers had failed to maintain adequate insurance coverage on the property as required by the settlement agreement. The letter also expressed Whitaker's argument that, under the trust instrument, he was permitted to place into the trust other property as a substitute for the remainder interest in the farm.
Acting in his capacity as trustee, Fenstermaker investigated the allegation that there was insufficient insurance coverage for the property and found that there was no merit to the allegation. Fenstermaker also determined that no right to substitute other property was afforded Whitaker under either the settlement agreement or the trust instrument.
In April 1999, the Metzgers informed Fenstermaker that they intended to exercise their option to purchase Whitaker's remainder interest in the farm.
Whitaker, however, informed Fenstermaker that it was Whitaker's position that the alleged inadequate insurance coverage had effectively terminated the Metzgers' option rights. Whitaker also expressed his intention to substitute cash for the remainder interest in the farm in order to prevent the Metzgers from acquiring this interest through exercising their option to purchase it.
 III. The Declaratory-Judgment Action
Faced with the conflict between the parties and his duties as trustee, Fenstermaker filed a complaint for declaratory judgment. Fenstermaker sought to have the trial court define the rights of the parties under the trust and settlement agreement, as well as his correlating duties and responsibilities as trustee.
Several counterclaims and cross-claims were filed between the Metzgers and Whitaker, and against Fenstermaker. Among these claims was a counterclaim by Whitaker alleging a breach of fiduciary duty by Fenstermaker.
Following discovery, the parties waived presentation of evidence and oral argument. Based on an agreement between the parties, the matter was submitted to the trial court by motion and brief. Whitaker filed a motion for summary judgment claiming that the Metzgers' option was void due to their failure to meet a condition precedent (i.e., to maintain adequate insurance coverage). Whitaker also sought summary judgment on his claim of a breach of fiduciary duty by Fenstermaker.
Likewise, Fenstermaker filed a motion for summary judgment on Whitaker's claim of breach of fiduciary duty and other claims Whitaker made against Fenstermaker. Fenstermaker also filed a memorandum for declaratory judgment.
The Metzgers filed a motion for declaratory judgment seeking the enforcement of the settlement agreement and ordering Fenstermaker to convey the remainder interest in the farm to the Metzgers pursuant to the exercise of their option to purchase Whitaker's remainder interest in the farm.
The trial court entered its judgment in April 2000, finding that the settlement agreement and trust instrument did not afford Whitaker the right to substitute other property for the farm's remainder interest in the trust. The trial court also granted Fenstermaker's motion for summary judgment on Whitaker's counterclaim alleging a breach of fiduciary duty. The trial court further found that the Metzgers' option to repurchase the remainder was not terminated for lack of adequate insurance because proper coverage was in fact maintained. Finally, the trial court awarded Fenstermaker and the Metzgers attorney fees and costs that they had incurred relating to this action.
 IV. The Appeal
Whitaker timely filed a notice of appeal and presents the following assignments of error for our review.
FIRST ASSIGNMENT OF ERROR:
 THE COURT OF COMMON PLEAS, PICKAWAY COUNTY, OHIO * * * ERRED IN GRANTING THE APPELLEE, ERIC B. FENSTERMAKER * * * [SIC], MOTION FOR DECLARATORY JUDGMENT CONCLUDING THAT THE TRUST AGREEMENT FOR THE MICHAEL WHITAKER FARM TRUST * * * DID NOT PERMIT APPELLANT WHITAKER WHITAKER TO "REACQUIRE THE PROPERTY OR PRINCIPAL FROM THE TRUST BY SUBSTITUTION OF OTHER PROPERTY." * * *
SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN DENYING APPELLANT WHITAKER'S COUNTERCLAIM, WHICH ALLEGED A BREACH OF FIDUCIARY DUTY BY APPELLEE FENSTERMAKER. * * *
THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN FINDING THAT APPELLEE FENSTERMAKER AND APPELLEES METZGER "ARE ENTITLED TO RECOVER COURT COSTS, ATTORNEY FEES, AND OTHER COSTS INCURRED BY THEM IN RELATION TO THIS ACTION." * * *
FOURTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE FENSTERMAKER'S MOTION FOR DECLARATORY JUDGMENT CONCLUDING THAT APPELLEES, COOKE METZGER, JEANNE METZGER, MEL EARICH AND KRISTEN EARICH * * * "DID MAINTAIN INSURANCE THAT ADEQUATELY PROTECTED WHITAKER'S REMAINDER INTEREST IN THE PROPERTY." * * *
A. Whitaker's Supposed Right Of Substitution Under The Trust
In his First Assignment of Error, Whitaker argues that the trial court erred in finding that he is not afforded the right under the settlement agreement or the trust instrument to substitute other property of equal value for the trust property (i.e., the remainder in the farm). Whitaker's argument involves the interpretation of the written trust instrument and the settlement agreement.
"The construction of written contracts and instruments * * * is a matter of law." Long Beach Ass'n v. Jones (1998), 82 Ohio St.3d 574, 576,697 N.E.2d 208, 210. Issues of law are subject to a de novo review. SeeOhio Bell Tel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147,593 N.E.2d 286, 287.
In the present case, the settlement agreement unequivocally states that the trust agreement is "incorporated herein as a part of this Agreement." It is well-settled law that when two written documents are included in a transaction, they will be interpreted jointly as one document. See FosterWheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 678 N.E.2d 519.
There are specific guiding principles of interpretation that apply to trusts and settlement agreements.
When construing provisions of a trust, our primary duty is to "ascertain, within the bounds of the law, the intent of the * * * settlor." Domo v. McCarthy (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706,708. The express language of the trust guides the court in determining the intentions of the settlor. Casey v. Gallagher (1967), 11 Ohio St.2d 42,227 N.E.2d 801. Any words used in the trust are presumed to be used according to their common, ordinary meaning. Albright v. Albright
(1927), 116 Ohio St. 668, 157 N.E. 760.
In re Trust U/W of Brooke (1998), 82 Ohio St.3d 553, 557, 697 N.E.2d 191,194.
The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. AultmanHosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53,544 N.E.2d 920, 923. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kellyv. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus.
Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth., 78 Ohio St.3d at 361, 678 N.E.2d at 526.
According to the terms of the trust, Whitaker was the grantor or settlor of the trust and Fenstermaker was the trustee. The trust provides that Whitaker "shall have no right to the principal of the Trust until the Trust is terminated." The trust also provides that Fenstermaker "shall grant" the Metzgers "the right and option to purchase the remainder interest in certain real property held by Trustee." The trust instrument further states that the trust was a "revocable" trust and proceeds to define the term "revocable" to mean that Whitaker cannot revoke or modify the trust, without the trustee's agreement, until the expiration of the Metzgers' option.
In addition, however, the trust instrument provides that Whitaker intends for the trust to qualify as a "grantor trust" under the Internal Revenue Code, specifically, Section 671, Title 26, U.S.Code. In an attempt to make the trust subject to Section 671, the trust instrument provides that Whitaker may "reacquire any principal comprising the Trust Estate by substituting other property of an equivalent value."
As previously stated, the trust instrument was expressly incorporated into the settlement agreement and as such, the language of the settlement agreement also reveals Whitaker's intent in creating the trust and the intent of the parties to the transaction. See Foster WheelerEnviresponse, Inc., supra. The settlement agreement provides that Whitaker, the Metzgers, and Fenstermaker agree that the remainder interest transferred by the Metzgers to Whitaker, and held in trust by Fenstermaker, is subject to a purchase option for the Metzgers.
The settlement agreement provided very specific terms for the option's exercise. The period during which the Metzgers could exercise the option was from April 16, 1999 until July 15, 1999. The settlement agreement also provided the purchase price and methods of payment.
From the language of the settlement agreement and trust instrument, this Court can glean both the intent of the parties to the transaction and Whitaker's intent in creating the trust. The parties intended to settle their prior disputes. To accomplish the settlement, the Metzgers transferred a remainder interest in the farm to Whitaker for his use in a collateral transaction. However, the Metzgers wanted assurance that they would be able to repurchase the remainder. Thus, the remainder was to be transferred subject to an option, a term certain, and held in trust by Fenstermaker for Whitaker.
Given the circumstances under which the transaction developed, the language denying any right to the trust principal by Whitaker was included to prevent Whitaker from attempting to remove the remainder interest from the trust. The language setting up Whitaker's substitution rights was included as a foundation for the beneficial tax treatment sought by Whitaker.
"However, it is well established that when construing contractual agreements like this trust agreement, courts are to give effect to all parts of a document by harmonizing potentially dissonant parts to effectuate the intentions of the parties as gathered from the whole instrument." Lourdes College v. Bishop (1997), 94 Ohio Misc.2d 51,703 N.E.2d 362, citing Ford Motor Co. v. Frazier Sons Co. (1964),8 Ohio App.2d 158, 161, 196 N.E.2d 335, 337-338; Arnett v. MidwesternEnt., Inc. (1994), 95 Ohio App.3d 429, 434, 642 N.E.2d 683, 686-687;Kelley v. Cairns Bros., Inc. (1993), 89 Ohio App.3d 598, 607,626 N.E.2d 986, 991-992.
Therefore, a logical interpretation of the trust instrument is that Whitaker has no rights in the trust principal (i.e., the remainder interest in the farm) until either the option held by the Metzgers expires or the trust is terminated. By its terms, the trust can be terminated in one of two ways: 1) revocation by Whitaker after July 15, 1999, which is after the expiration of the Metzgers' option period; or 2) automatically on September 28, 2000, when the trust property is distributed to Whitaker or his estate. Under both of these scenarios, the option to buy the remainder held by the Metzgers remains intact. Hence, Whitaker's right to substitute other property of equivalent value does not mature until the option has expired.
Accordingly, Whitaker has no substitution rights in the property and Whitaker's First Assignment of Error is OVERRULED.
 B. Fenstermaker's Alleged Breach Of Fiduciary Duty
Whitaker argues in his Second Assignment of Error that the trial court erred by denying his counterclaim that alleged that as trustee Fenstermaker had committed a breach of fiduciary duty. The trial court granted Fenstermaker's motion for summary judgment on this claim.
We conduct a de novo review of the trial court's grant of summary judgment pursuant to Civ.R. 56. See Renner v. Derrin Acquisition Corp. (1996), 111 Ohio App.3d 326, 676 N.E.2d 151. The Supreme Court of Ohio has laid out the proper test to determine whether summary judgment is appropriate.
Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346,617 N.E.2d 1129, 1132, quoting Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267, 274. Therefore, we give no deference to the judgment of the trial court. See Renner, supra.
As a general rule a trustee's authority over the trust property is defined and limited by the instrument creating the trust, and his duty is to pursue his powers strictly. A trustee should confine his acts to carrying into effect the provisions of the trust under which he is acting, and if in doubt should apply to the proper court for instruction.
91 Ohio Jurisprudence 3d (1989) 432-433, Trusts, Section 398 (footnotes omitted); see, also, Daloia v. Franciscan Health Sys. (1997),79 Ohio St.3d 98, 679 N.E.2d 1084; Stevens v. National City Bank (1989),45 Ohio St.3d 276, 544 N.E.2d 612; In re Sedgwick's Will (1944),74 Ohio App. 444, 59 N.E.2d 616.
Whitaker alleges that Fenstermaker continued to represent the Metzgers after becoming Whitaker's fiduciary as trustee of the farm trust. In his affidavit, submitted with his motion for summary judgment, Fenstermaker states that at the conclusion of the transaction, he notified the Metzgers that he would no longer be able to represent them in matters concerning the farm. Fenstermaker further stated that he provided no legal services to the Metzgers concerning the farm.
Whitaker testified in his deposition that he "never doubted" that Fenstermaker would "in some capacity" continue to represent the Metzgers since Fenstermaker had done so in the past and during the negotiations of the present transaction. Whitaker testified that he agreed to Fenstermaker's appointment as trustee so that the transaction could be completed before his tax deadline.
Whitaker has put forth no evidence to support his allegations of a breach of fiduciary duty by Fenstermaker. Furthermore, Fenstermaker properly handled the dispute that arose upon the Metzgers' attempt to exercise their option to purchase the remainder and Whitaker's demands to substitute other property for the remainder and thereby allegedly defeat the option. Faced with such a conflict and the parties' lack of desire to negotiate a settlement, Fenstermaker prudently sought the court's guidance and interpretation of the agreements. See Holmes v. Hroboni
(1953), 158 Ohio St. 508, 527, 110 N.E.2d 574, 585 (stating that a trustee's decision to obtain the guidance of the appropriate court prior to a significant exercise of his authority indicates a careful and orderly administration of the trust).
Whitaker also contends that Fenstermaker should not have become Whitaker's trustee since Fenstermaker had represented the Metzgers in the negotiations leading up to the transaction that was executed. However, the record shows that Fenstermaker's appointment was negotiated and agreed to by both Whitaker and the Metzgers. Therefore, any of Whitaker's objections to Fenstermaker's appointment as trustee were waived. SeeHuntington Nat'l Bank v. Wolfe (1994), 99 Ohio App.3d 585, 651 N.E.2d 458
(stating that, "[T]he mere existence of [a] conflict, known and anticipated by the settlor, does not disqualify the individual [trustee] from participating in decisions regarding the trust with respect to which, arguably, the individual trustee may have conflicting interests.").
Accordingly, Whitaker's Second Assignment of Error is OVERRULED.
 C. Fenstermaker's And The Metzgers' Attorney Fees
Whitaker argues in his Third Assignment of Error that the trial court erred by granting Fenstermaker's and the Metzgers' claims for attorney fees and costs. Specifically, Whitaker argues that the trial court erred when it awarded attorney fees to appellees because he should have prevailed on his claim against Fenstermaker for breach of fiduciary duty and his arguments concerning the interpretation of the trust instrument and settlement agreement. Since we have already found Whitaker's arguments concerning these issues to be without merit, the trial court's award of attorney fees to Fenstermaker and the Metzgers could not be erroneous on those grounds.
Generally, without a showing of bad faith or statutory provision, a prevailing party is not entitled to attorney fees. See State ex rel.Durkin v. Ungaro (1988), 39 Ohio St.3d 191, 529 N.E.2d 1268. However, contracting parties may enter into an agreement that affords the recovery of attorney fees in the event of a conflict resolved through legal action. See Motorist Ins. Cos. v. Shields (Jan. 29, 2001), Athens App. No. 00CA26, unreported, citing Nottingdale Homeowners' Assn. v. Darby
(1987) 33 Ohio St.3d 32, 514 N.E.2d 702.
[A] contractual attorney fee provision will be enforceable when: (1) the contract is entered into in a non-commercial setting; (2) when the parties share an equal bargaining position; (3) when the parties are of similar sophistication; (4) when the provision has been freely negotiated; and (5) when both parties had the opportunity to have counsel review the provision.
Motorist Ins. Cos., supra.
In the case sub judice, the settlement agreement contains the following provisions, which address this issue with great specificity.
[I]f Metzger elects to purchase the remainder interest in the Property from Trustee, Whitaker promises not to contest in any way the Trustee's right to transfer such remainder interest in the Property to Metzger, andWhitaker agrees to pay Metzger and/or Trustee all court costs, attorneyfees and other costs incurred by any action or related to any actiontaken by Whitaker to interfere and/or contest with [sic] Trustee's rightto convey such remainder interest in the Property to Metzger if Whitakerloses such action.
If any action at law or in equity is necessary to enforce or interpret the intent of the Agreement, the party successfully receiving a final judicial decision shall be entitled to the recovery of all attorneys'fees, court costs and any other provable [sic] from the losing party. (Emphasis added.)
Further, the trust instrument states that, "Every Trustee shall be entitled to be reimbursed for expenses and costs, including legal fees."
Whitaker makes no argument concerning the enforceability of these contract and trust provisions, and from a review of the record it would appear that the factors set forth in Motorist Ins. Cos. have been satisfied. Further, Whitaker does not argue that the amount he was ordered to pay in attorney fees was unreasonable.
Thus, this Court finds that, pursuant to the settlement agreement and the trust instrument, Fenstermaker and the Metzgers are entitled to recover from Whitaker their court costs, attorney fees, and other provable costs.
Accordingly, Whitaker's Third Assignment of Error is OVERRULED.
 D. The Adequacy Of The Insurance Maintained On The Farm
Whitaker argues in his final assignment of error that the Metzgers failed to meet a condition precedent to the exercise of their option. The settlement agreement provides that
[I]n order to exercise the Option, Metzger must keep insurance in place that adequately protects Whitaker's remainder interest in the Property from losses due to fire and other insurable events. If Metzger fails to remain current on mortgage and insurance payments, Whitaker may request, in writing, that said payments be brought current within ten days. Should the requested payment not be made within [sic] ten day cure period after conveyance of written notice by Whitaker, then all rights to acquire the remainder interest in the Property pursuant to the Option shall terminate and, thereafter, Whitaker will no longer be contractually bound to convey the remainder interest in the Property to Metzger. All insurance proceeds shall be reinvested to maintain value of Property, whether by rebuilding or payment on the mortgages to Farm Credit Services of Mid-America, ACA.
In the proceedings before the trial court, Whitaker argued that the Metzgers had failed to maintain adequate insurance to protect his remainder interest in the farm. Based on the insurance documentation provided by the parties, the trial court found that the Metzgers had maintained the same insurance coverage on the property that Whitaker had when he owned the property. The trial court also found that the Metzgers had voluntarily increased the amount of insurance coverage on the farm during the relevant time period.
As previously noted the interpretation of written contracts is a matter of law and subject to a de novo review on appeal. Beach Ass'n v. Jones,82 Ohio St.3d at 574, 697 N.E.2d at 208; Ohio Bell Tel. Co. v. Pub.Util. Comm., 64 Ohio St.3d at 145, 593 N.E.2d at 286.
Whitaker's argument to this Court is that in order for the remainder interest bought by Whitaker and held by Fenstermaker to be protected, Fenstermaker would need to be named as a co-insured on the insurance policies. This argument is without merit and was properly rejected by the trial court.
The insurance provision of the settlement agreement does not require the naming of particular individuals as beneficiaries to the policies and provides that any insurance proceeds received from a loss to the property be reinvested in the property. As the trial court found, had Whitaker wanted himself or Fenstermaker named as a co-insured he could have negotiated for such a provision to be included in the settlement agreement.
Similarly, the language requiring the reinvestment of any insurance proceeds into the property adequately protected Whitaker's remainder interest. A loss to the property covered by the insurance would not devalue Whitaker's interest in the property because any insurance proceeds payable to the Metzgers due to the loss were required to be spent on repairs to the property or paying down of the mortgages on the property. Thus, the value of the property is maintained for both the Metzgers and Whitaker.
Accordingly, Whitaker's Fourth Assignment of Error is hereby OVERRULED.
Because Whitaker's arguments have been found to be without merit, we AFFIRM the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellees recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the PICKAWAY COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Concurs in Judgment and Opinion.
Harsha, J. Concurs in Judgment Only.