OPINION
Rollin Cooke III ("Cooke") purchased 62 undeveloped acres in Chardon Village, which he transferred in June 1995 to appellee, Willo Tree Development, Inc. ("Willo Tree"). At the time of the transfer, the shareholders of Willo Tree were Cooke and Gregory Shefchuk ("Shefchuk"), each owning 50% of the shares in the corporation. At the same time, Cooke and Shefchuk each owned 50% of the shares of Power Play Bowling Products, Inc. ("Power Play"), a bowling ball manufacturer.
On May 23, 1997, Gregory Shefchuk signed a note and mortgage, as vice president of Willo Tree, in favor of appellant Park View Federal Savings Bank. This mortgage secured a short-term loan for $150,000, for the stated purpose of purchasing equipment for Power Play. The loan proceeds were used for the benefit of Power Play. Cooke was never told of this loan.
At this time, Shefchuk and appellant were engaged in negotiations concerning a joint venture between Shefchuk's financial planning business, RCS Financial and appellant. Shefchuk's company was to provide financial planning services to appellant's customers. These negotiations eventually resulted in the establishment of PVF Financial Planning, Inc., a corporation owned by PVF Holdings, appellant's sister corporation, and RCS Financial.
On June 11, 1997, Shefchuk contacted appellant again and suggested it lend appellee an additional $350,000; $150,000 to be used to repay the May 23, 1997 short-term loan, and an additional $200,000 to be used to pay the final amount Shefchuk owed to his first wife.
In June 1997, Shefchuk and the unwitting Cooke met with representatives of appellant and requested a loan for $350,000, to purchase chemicals necessary for Power Play to manufacture bowling balls, to be secured by a mortgage on the Willo Tree property. Cooke was not aware that there was already a $150,000 note secured by a mortgage on the Willo Tree property, nor was he aware that Shefchuk had previously contacted appellant and intended to use the $350,000 loan to refinance the prior loan and to pay off his ex-wife.
Appellant approved the loan of $350,000, on June 17, 1997, and paid the prior $150,000 Willo Tree debt, distributing the remaining $200,000 by a check delivered to Shefchuk, made payable to Willo Tree. Shefchuk took the check for Willo Tree and endorsed it "payable to RCS Financial." RCS Financial was a company wholly owned by Shefchuk.
On July 6, 1998, appellant filed suit for judgment on the $350,000 note and foreclosure of the mortgage as well as a note and mortgage in the amount of $262,500 which Shefchuk entered into on behalf of appellee.[1]
Appellee filed an answer and counterclaim alleging the notes and mortgages were fraudulent and entered into without authority, that they were unenforceable, and that the loans never benefited the mortgagor.
After a two-day bench trial, the Geauga County Common Pleas Court found in favor of appellant on a portion of its action, and against appellee on its counterclaims. The court found that appellant had failed to prove that $200,000 of the $350,000 loan was enforceable against appellee, because Shefchuk exceeded his authority by taking the money for personal use, and appellant was aware he intended to do so. The court thus reduced the amount of the July 17, 1997 loan to the $150,000 that was used to refinance the prior short-term loan against the Willo Tree property.
Appellant raises the following assignments of error:[2]
 "[1.] The trial court abused its discretion and erred in reducing the balance of plaintiff-appellant's note and mortgage dated June 25, 1997.
 "[2.] The trial court's decision to reduce the balance of the June 25, 1997 note and mortgage is not supported by law or evidence.
 "[3] Willo Tree Development, Inc. did not prove its claim by clear and convincing evidence.
 Appellant's brief presents three assignments of error to this court for determination. The first two assignments are, in essence, a hybrid argument of manifest weight and sufficiency of the evidence, and they will be discussed together for convenience. Appellant argues that the decision of the trial court to reduce the balance of the June 25, 1997 note and mortgage was against the manifest weight of the evidence. Appellant also argues that the trial court was not presented with sufficient evidence of scienter regarding the $200,000 check made payable to Willo Tree.
Both parties contend that the proper standard of review for the court's decision is abuse of discretion. However, in a bench trial where the court is functioning as the trier of fact, the question here on review of that court's findings of fact is whether they were against the manifest weight of the evidence. See, e.g., Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 461 N.E.2d 1273.
"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. In reviewing a bench trial, a court of appeals must be guided by the presumption that the findings of the trier of fact are correct.Seasons Coal Co., supra.
Appellant argues that the court's decision to reduce the amount owed by appellee on the June 25, 1997 loan by $200,000 was error. In its September 22, 2000 order, the court stated as its reason for the reduction that "Gregory D. Shefchuk exceeded his authority by taking $200,000 of the June 25, 1997 loan for personal use and that Park View Federal Savings Bank was aware before dispersing the funds that Shefchuk was going to do so." The findings of fact and conclusions of law from the Sept. 22, 2000 order were incorporated by reference in the court's November 17, 2000 foreclosure decree.[3]
Appellant first argues that Shefchuk had actual authority to enter into the loan on behalf of appellee. In general, an agent cannot bind his principal to a contract entered into in violation of his actual authority. Meyer v. Klensch (1 Dist. 1961), 114 Ohio App. 4, 6. A corporation's president has implied authority to enter binding contracts on behalf of the corporation, but only for contracts that fall within the "scope of ordinary business transactions." Ameritrust Co. Natl. Assn.V. Hicks Dev. Corp. (10 Dist. 1993), 91 Ohio App.3d 377, 381. Mortgaging a corporation's assets is not an ordinary business transaction. Id.
There is sufficient evidence in the record to support the court's finding that Shefchuk had exceeded his authority by entering into the loan agreement and taking $200,000 of the loan for his personal use. This evidence includes Cooke's testimony that it was his understanding that the proceeds of the June 17, 1997 loan were to benefit Power Play, and that this intent had been communicated to appellant. Evidence was also presented at trial that Cooke, holder of 50%of the corporation's shares, had not signed the corporate resolution that authorized the transaction, and that Shefchuk had
forged Cooke's name on that document. In addition, Cooke testified that he did not know that $200,000 of the proceeds of the loan were going to be used for Shefchuk's personal purposes. This is ample competent and credible evidence to support the court's finding that $200,000 of the loan for $350,000 was unauthorized.
Appellant next argues that, even if Shefchuk did not have actual authority to enter into the loan agreement, Cooke allowed him to hold himself out as having authority and appellant relied on Shefchuk's apparent authority when making the June 17, 1997 loan.
If a principal is not bound by a contract because it was entered into outside the agent's scope of authority, the principal may still be bound by the contract under the theories of apparent agency and ratification.See Meyer, supra.
A party claiming apparent agency must affirmatively show that: 1) the principal held the agent out to the public as possessing sufficient authority to do the act in question or knowingly permitted him to act as having such authority; 2) the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. Master Consolidated Corp.v. Bancohio (1991), 61 Ohio St.3d 570.
There is also ample evidence in the record to support a finding that apparent agency did not apply in this situation. First, evidence was presented in the form of testimony by Cooke, which, if believed, would lead to the conclusion that appellee neither held Shefchuk out as having authority to enter the agreement nor knowingly permitted Shefchuk to make an agreement to make a loan for his personal purposes secured by property owned by the corporation.
The corporate resolution purporting to give Shefchuk authority to enter into the loan agreement on behalf of appellee was invalid, because it was forged by Shefchuk. This act of the agent is insufficient to create apparent agency even if appellant believed the resolution to be valid. The acts of an agent alone cannot create apparent authority; only the acts of the principal can "cloak the agent with apparent power to bind the principal." Universal Bank v. McCafferty (1993), 88 Ohio App.3d 556,558.
Cooke also testified that he attended a meeting at appellant's offices for the purpose of discussing a loan to be used for Power Play's benefit. Cooke testified that at this meeting, it was made clear to appellant that the intent for this loan was for the proceeds to be used to purchase chemicals required to produce bowling balls. This is competent, credible evidence to show that appellee did not hold Shefchuk out as having authority to bind the corporation to a mortgage and note on its property securing a loan used for Shefchuk's personal purposes.
Second, the record reveals that appellant had knowledge of Shefchuk's intent to use $200,000 of the $350,000 loan for personal purposes. Thus, it failed to act in good faith by allowing Shefchuk to enter into the loan agreement on behalf of Willo Tree.
Appellant's president, John R. Male, testified that he received a letter from Shefchuk expressing his intention to use the proceeds of the $200,000 loan for personal purposes. Despite knowing of this intended use, appellant's records indicate that this loan was intended for "investment purposes." Evidence indicated that the bank's own lending rules prohibited the personal use of funds lent in commercial transactions. There is also testimony in the record that appellant knew that appellee intended the loan to benefit Power Play, not Shefchuk, and the court foreclosed the $150,000 of the loan which did benefit Power Play. This is competent, credible evidence that would support a finding that appellant was not acting in good faith in making the loan.
To prove ratification of a contract, the proponent must show that the principal engaged in conduct, with full knowledge of the facts, which manifests his intention to ratify the unauthorized transaction. Meyer,supra. As discussed above, Cooke testified that he knew nothing of the fact that Shefchuk sought $200,000 of the proceeds of the $350,000 loan for personal purposes until long after the note and mortgage were signed, and the proceeds disbursed. Without full knowledge of the facts of the transaction, appellee, through Cooke, could not have ratified the contract.
Appellant further alleges that there is no evidence in the record to show that Shefchuk actually took $200,000 of the loan. There is in the record, however, sufficient competent, credible evidence to support the court's decision.
The evidence is uncontroverted that Shefchuk informed appellant that he intended to take $200,000 of the loan to appellee for personal purposes. Appellant's own exhibits contain the check to Willo Tree Developments, Inc. for $200,000, which was endorsed by Shefchuk "payable to RCS Financial." Testimony was adduced at trial that RCS Financial was a company owned by Shefchuk and that appellant had knowledge of this fact. This constitutes sufficient competent, credible evidence to support a finding that Shefchuk did actually take the $200,000 for his own use.
Appellant's arguments that appellee could have presented better evidence of what happened to the $200,000 are irrelevant. The issue is whether the conclusions the court reached were supported by competent, credible evidence that was presented. We find that the court's decision was supported by competent, credible evidence going to all the elements of the action. Appellant's first and second assignments of error are without merit.
In its third assignment, appellant claims that appellee did not prove its claims by clear and convincing evidence. This argument is based upon a misinterpretation of the trial court's ruling. The court made it clear, in an order dated October 31, 2000, that when it found appellant owed only $150,000 of the $350,000 loan, it was not finding in favor of appellee on its counterclaim. Instead, the court found that appellant had failed to prove that appellee was liable to it for the $200,000 which Shefchuk had taken for his personal use. The court's decision was based not on appellee's meeting the burden of proof, but rather on appellant's failure to meet its burden of proof as to that portion of the loan.
Even if the court had determined that appellee had prevailed on its counterclaim, appellant's third assignment is without merit. This court has held that in matters that must be proven in the trial court by clear and convincing evidence, the standard of review for whether the verdict is against the weight of the evidence is still "some competent credible evidence." Lawrence v. Rein (Aug. 18, 1992), Trumbull App. No. 91-T-4528, unreported; citing State v. Cantrell (Dec. 5, 1991), Scioto App. No. 90-CA-1909, unreported. As we have made clear in the preceding discussion of assignments one and two, there is sufficient competent, credible evidence in the record to support the court's finding that appellant is not entitled to $200,000 of the $350,000 loan made, on June 17, 1997.
For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.
JUDGE ROBERT A. NADER, FORD, P.J., CHRISTLEY, J., concur.
[1] The claim for $262,500 is not a part of this appeal.
[2] Appellant did not include any assignments of error in its brief, as is required by Loc.R. 12, nor did it comply with most of the other requirements for the format of an appellate brief, but we will discuss the brief as if it had included proper assignments of error.
[3] Appellant appealed the September 22, 2000 order, which was not a final appealable order. This court ordered appellant to show cause why its appeal should not be dismissed. After we issued this order, the trial court issued its entry of foreclosure, which incorporated the September 22 order by reference. As this was a final, appealable order, we treated appellant's notice of appeal as prematurely filed, pursuant to App.R. 4(C).