[Cite as *Paterson v. Equity Trust Co.*, 2012-Ohio-860.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN )

DOUGLAS M. PATERSON, ET AL.

    Appellants

    v.

EQUITY TRUST COMPANY

    Appellee

C.A. No. 11CA009993

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No. 09CV160723

DECISION AND JOURNAL ENTRY

Dated: March 5, 2012

---

WHITMORE, Presiding Judge.

{¶1} Plaintiff-Appellants, Douglas Paterson and Douglas Paterson as Beneficiary of Equity Trust Company FBO Douglas Paterson IRA No. 70492 (collectively "Paterson"), appeal from the judgment of the Lorain County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellee, Equity Trust Company ("Equity Trust"). This Court affirms.

I

{¶2} Paterson acquired a public retirement fund after he spent numerous years as a public employee in Michigan. Seeking help with bookkeeping and investment opportunities, Paterson hired Jeff Sadlak, an investment advisor for whom Paterson had received a recommendation. Sadlak eventually suggested that Paterson invest in a real estate venture through a company named Williamston Holdings, LLC ("Williamston"). According to Sadlak, he had identified a piece of property in Williamston, Michigan worth far more than the debt due on the land. Williamston would use its investors' funds to eliminate the debt and flip the

property for a large profit. Williamston's investors would then receive back their initial investments as well as a portion of the profit. Sadlak informed Paterson that Paterson would need to transfer funds from his public retirement account to a self-directed Individual Retirement Account ("IRA") to facilitate the investment with Williamston. Paterson agreed and signed an IRA account application with Equity Trust on January 29, 2007.

{¶3} On February 13, 2007, Equity Trust received two letters and a direction of investment form, requesting the transfer of $66,666.66 from Paterson's IRA to Williamston. The second letter indicated that the transfer to Williamston represented a loan and Equity Trust would be forwarded a properly executed loan agreement as well as a security agreement, pledging shares of Williamston as security for the loan. The letters and the form all bore Paterson's signature, but he never signed the documents. Rather, Sadlak signed Paterson's name on the documents and sent them to Equity Trust. Pursuant to the letters and the form, Equity Trust transferred $66,666.66 to Williamston. Paterson's quarterly statements from Equity Trust reflected the transfer to Williamston.

{¶4} Equity Trust never received a promissory note or security agreement as collateral for the loan. In early summer 2008, Paterson learned that the property in which he had invested through Williamston was being foreclosed upon and that he did not have any secured ownership interest in the property. Paterson ultimately asked Equity Trust to reimburse the $66,666.66 it transferred to Williamston because he never signed for the transfer. Equity Trust refused.

{¶5} On February 12, 2009, Paterson filed suit against Equity Trust for conducting a sale in violation of Ohio's securities laws as well as for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and intentional and negligent misrepresentation. Equity Trust filed a motion for summary judgment on December 30, 2010.

Paterson responded in opposition on February 22, 2011, and Equity Trust filed its reply brief on March 15, 2011. The trial court determined that no genuine issues of material fact existed, entered summary judgment in favor of Equity Trust, and dismissed all of Paterson's claims.

{¶6} Paterson now appeals from the trial court's judgment and raises three assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT FOR EQUITY TRUST COMPANY ON COUNT V, MR. PATERSON'S CLAIM THAT EQUITY TRUST WAS LIABLE TO HIM FOR ITS VIOLATION OF O.R.C. 1707 ET SEQ., THE OHIO SECURITIES ACT, BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER MR. PATERSON'S INVESTMENT WAS A SECURITY REQUIRED TO BE REGISTERED AND WHETHER EQUITY TRUST'S ACTS CONSTITUTE AIDING OR PARTICIPATING IN THE SALE TO HIM OF THAT SECURITY.

{¶7} In his first assignment of error, Paterson argues that the trial court erred by concluding that Equity Trust was entitled to summary judgment on his claim under R.C. 1707 et seq.[1] Specifically, he argues that genuine issues remain as to whether Equity Trust aided or participated in the sale of an unregistered security in violation of R.C. 1707.44. We disagree.

{¶8} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing

---

[1] For clarification purposes, this Court notes that, although Paterson's captioned assignment of error references Count V of his complaint, the remaining content of his assignment of error and his argument actually address Count VI.

such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶9} R.C. 1707.44(C)(1) prohibits any person from knowingly selling any unregistered security that is not exempt from registration. R.C. 1707.43(A) affords the purchaser of a security sold in violation of R.C. Chapter 1707 a remedy in the form of voiding the sale. It also provides that:

> [t]he person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by the purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

R.C. 1707.43(A). The sale of a security in violation of R.C. 1707.44(C)(1) materially affects the protection contemplated by that provision. *Pencheff v. Adams*, 5 Ohio St.3d 153, 154-155 (1983). The phrase "participated in or aided the seller in any way" is "broad in scope" and must

be applied as such. *Johnson v. Church of the Open Door*, 179 Ohio App.3d 532, 2008-Ohio-6054, ¶ 23 (9th Dist.).

{¶10} Paterson's theory here was that Sadlak sold him an investment in Williamston that was required to be registered as a security. R.C. 1707.01(B) defines a security as follows:

> "Security" means any certificate or instrument, or any oral, written, or electronic agreement, understanding, or opportunity, that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes shares of stock, certificates for shares of stock, an uncertificated security, membership interests in limited liability companies, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, land trust certificates, fee certificates, leasehold certificates, syndicate certificates, endowment certificates, interests in or under profit-sharing or participation agreements, interests in or under oil, gas, or mining leases, preorganization or reorganization subscriptions, preorganization certificates, reorganization certificates, interests in any trust or pretended trust, any investment contract, any life settlement interest, any instrument evidencing a promise or an agreement to pay money, warehouse receipts for intoxicating liquor, and the currency of any government other than those of the United States and Canada, but sections 1707.01 to 1707.45 of the Revised Code do not apply to the sale of real estate.

R.C. 1707.01(B). In the court below, Paterson described his alleged security as a note, an instrument closely resembling a promissory note, and a promissory investment. He also quoted the portion of R.C. 1707.01(B) that includes "any investment contract" as a form of security, but did not elaborate on that point. That is, he did not set forth the test that applies to investment contracts or analyze whether he and Sadlak/Williamston had an investment contract. *See, e.g.*, *Cartwright v. Falls Heating & Cooling, Inc.*, 9th Dist. No. 16079, 1994 WL 286280, *4 (June 29, 1994) (setting forth the test for investment contracts). In general, his argument as to why his investment with Williamston was a "security" was ill-developed.

{¶11} There is no dispute that Equity Trust did not sell Paterson the alleged security here. At most, Equity Trust aided or participated in the sale of a security between Paterson and

Sadlak/Williamston. The record, however, does not contain any instrument reflecting a sale from Sadlak/Williamston to Paterson. The direction of investment form filed with Equity Trust contains the following notation under a section instructing the account holder to list any titles or documents that require signing: "note documents will [be] following receipt of transfer of funds closing will take place when funds are received and then mailed to [Equity Trust]." Further, the letter accompanying the form indicates that a "[p]roperly executed loan agreement" and "[s]ecurity agreement pledging the units/shares of Williamston" would be forwarded to Equity Trust after Williamston received the disbursement. The "Borrower's Signature" block on the direction of investment form is blank. In his deposition, Paterson described his understanding of the Williamston investment, but did not testify that he signed any loan or security agreement with Sadlak, Williamston, or the owner of the property Williamston apparently sought to purchase as an investment. Moreover, Equity Trust never received any loan or security agreement after transferring the funds.

{¶12} "R.C. 1707.01(B) provides the general definition of a security, which can be applied to any certificate or instrument to determine whether it is a security, and the second sentence provides a list of certificates and instruments that are presumptively securities." *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, paragraph one of the syllabus. More specific tests apply depending upon the nature of the alleged security. *See, e.g., id.* at ¶ 12-14, citing *Reeves v. Ernst & Young*, 494 U.S. 56, 66-67 (1990) (setting forth the "family-resemblance test" for notes); *Cartwright* at *4 (June 29, 1994) (setting forth the test for investment contracts). The problem here is that Paterson never made any instrument a part of the record. To the extent he now tries to categorize his arrangement with Sadlak/Williamston as an "investment contract," he did not develop that argument in the court below. *See Nat. City Mtge.*

*v. Skipper*, 9th Dist. No. 24772, 2009-Ohio-5940, ¶ 24 (refusing to consider argument on appeal that was not developed in the trial court at the summary judgment stage). He only set forth the law that must be applied to analyze "whether a particular note is a security" and argued about "the note" here in his memorandum in opposition. Yet, there is no evidence that any such note exists. The documentary evidence presented only shows that Equity Trust disbursed $66,666.66 to Williamston from Paterson's self-directed IRA with the expectation that proof of a security interest would be forthcoming.

{¶13} In the absence of proof that there was a "security" here, Equity Trust could not be liable for aiding or participating in the sale of an unregistered security. Paterson failed to show that a genuine issue of material fact exists with regard to whether he purchased a security. Accordingly, the trial court did not err by granting summary judgment in favor of Equity Trust on Paterson's claim under R.C. 1707.43(A). Paterson's first assignment of error is overruled.

Assignment of Error Number Two

THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT FOR EQUITY TRUST COMPANY ON COUNT III, MR. PATERSON'S BREACH OF FIDUCIARY DUTY CLAIM, BECAUSE WHETHER EQUITY TRUST OWED MR. PATERSON A FIDUCIARY DUTY IN THE CIRCUMSTANCES AND, IF SO, WHETHER EQUITY TRUST BREACHED THIS FIDUCIARY DUTY, ARE FACTUAL QUESTIONS.

{¶14} In his second assignment of error, Paterson argues that the trial court erred by concluding that Equity Trust was entitled to summary judgment on his claim for breach of fiduciary duty. Specifically, he argues that genuine issues remain as to whether Equity Trust, as his agent, failed to exercise reasonable care to protect his IRA account. We disagree.

{¶15} Because this assignment of error also stems from the trial court's summary judgment decision, we incorporate the standard of review set forth in the first assignment of error.

> A claim for breach of fiduciary duty is similar to one for ordinary negligence, with the difference being a need to establish that the duty arose out of a fiduciary relationship. A fiduciary relationship is defined as one in which special confidence and trust [are] reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.

(Internal quotations and citations omitted.) *Cook v. Reising*, 181 Ohio App.3d 546, 2009-Ohio-1131, ¶ 24 (9th Dist.) Such a relationship "may be created either formally, by contract, or informally." *Ligman v. Realty One Corp.*, 9th Dist. No. 23051, 2006-Ohio-5061, ¶ 9. The terms of unambiguous contracts must be interpreted according to their plain meaning. *Sarum Mgt., Inc. v. Alex N. Sill Co.*, 9th Dist. No. 23167, 2006-Ohio-5710, ¶ 8.

{¶16} The IRA Application Paterson admitted to signing contains the following provisions:

> 8.03    Representations and Responsibilities:
>
> (a) * * * By performing services under this Agreement [Equity Trust] [is] acting as your agent. You acknowledge and agree that nothing in this Agreement shall be construed as conferring fiduciary status upon us.
>
> * * *
>
> 8.05    Investment of Amounts in the IRA:
>
> * * *
>
> (b) Custodian Acting in Passive Capacity Only. [Equity Trust] [is] acting solely as a passive custodian to hold IRA assets and we have no discretion to direct any investment in your IRA. Accordingly, we are not a fiduciary * * * with respect to your IRA account.

The unambiguous terms of the application support the conclusion that no fiduciary relationship existed between Paterson and Equity Trust. Further, this Court has refused to recognize the existence of a fiduciary relationship between the custodian of a self-directed IRA and an investor in similar circumstances. *Tarquinio v. Equity Trust Co.*, 9th Dist. No. 06CA008913, 2007-Ohio-3305, ¶ 10-16.

{¶17} Patterson argues on appeal that a genuine issue of material fact exists here because Equity Trust acknowledged that it was serving as his agent, a position requiring it to exercise reasonable care and diligence. He points to the above-quoted language of section 8.03(a) of his IRA application, in which Equity Trust referred to itself as his agent. That argument, however, ignores the surrounding language in which Equity Trust expressly disavows any status as a fiduciary. The contract unambiguously provides that Equity Trust was not a fiduciary here. *See Sarum Mgt., Inc.* at ¶ 8. It does not support the argument that a fiduciary relationship existed.

{¶18} Paterson also argues on appeal that, as a matter of public policy, Equity Trust should not be permitted to disclaim its fiduciary duty as an agent by contract. The record reflects that Paterson did not make this argument in the court below. As such, he cannot raise it for the first time on appeal. *Morgan v. Village of Silver Lake*, 9th Dist. No. 25148, 2010-Ohio-3581, ¶ 11.

{¶19} Because Paterson failed to demonstrate that any genuine issue of material fact exists here with regard to whether Equity Trust owed him a fiduciary duty, the trial court did not err by concluding that Equity Trust was entitled to summary judgment on the claim for breach of a fiduciary duty. Paterson's second assignment of error is overruled.

Assignment of Error Number Three

> THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT FOR EQUITY TRUST COMPANY ON COUNT I, MR. PATERSON'S BREACH OF CONTRACT CLAIM, BECAUSE WHETHER EQUITY TRUST FORMED AN ADEQUATE "BELIEF" THAT THE DIRECTION OF INVESTMENT FORM WAS "GENUINE" AS REQUIRED BY THE APPLICATION AGREEMENT IS AN ISSUE OF MATERIAL FACT FOR THE JURY.

{¶20} In his third assignment of error, Paterson argues that the trial court erred by concluding that Equity Trust was entitled to summary judgment on his breach of contract claim. Specifically, he argues that genuine issues remain as to whether Equity Trust disbursed funds from his IRA in violation of their agreement. We disagree.

{¶21} Once again, we incorporate the standard of review and summary judgment law set forth in Paterson's first assignment of error. "Ratification has been defined as the approval by act, word, or conduct of that which was improperly done." *AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*, 81 Ohio App.3d 217, 221 (9th Dist.1992). A principal may ratify the unauthorized acts of his agent, "and such ratification relates back to the time of performance of the acts and binds the principal from that time." *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, ¶ 16, quoting *State v. Warner*, 55 Ohio St.3d 31, 65 (1990). Even an unauthorized signature may be ratified. *Beneficial Mortg. Co. of Ohio v. Ludrosky*, 9th Dist. No. 2311-M, 1994 WL 687204, *4 (Dec. 7, 1994). Ratification may be implied through conduct in the absence of an express ratification. *Campbell v. Hospitality Motor Inns, Inc.*, 24 Ohio St.3d 54, 57 (1986). Additionally, ratification may occur when a principal, having knowledge of his agent's acts, fails to repudiate them within a reasonable period of time. *Id.*

{¶22} Paterson claimed that Equity Trust breached its contract with him by disbursing the funds from his IRA on the basis of a forged signature. Equity Trust argued that it was entitled to summary judgment because Paterson ratified Sadlak's forgeries. In his deposition, Paterson admitted that he agreed to open a self-directed IRA with Equity Trust for the purpose of transferring funds to Williamston. He signed the account application, which Sadlak witnessed, on January 29, 2007. Paterson testified that he wanted to invest his money in Williamston and

knew that the investment would be approximately $66,000. He also knew the investment had occurred. The following exchanges took place during Paterson's deposition:

> Q: * * * [W]hen did you become aware that your IRA made an investment in the Williamston property?
>
> A: I believe [Sadlak] told me, and then I saw it on the * * * quarterly statement. I think the first quarterly statement that came reflected that there was a $66,000 investment in the Williamston property.
>
> * * *
>
> Q: And when [Sadlak] told you it had been invested, did you raise any objection?
>
> A: No.
>
> Q: In fact, this is what you wanted; was it not?
>
> A: Yes.
>
> Q: And it was your intent to invest the $66,666.66 in the Williamston property, as you referred to it, right?
>
> A: That's correct.

Paterson testified that he was aware Sadlak was sending forms to Equity Trust on his behalf. Although Paterson testified that he did not sign the letters or direction of investment form that Sadlak sent to Equity Trust, he could not recall if Sadlak told him he was sending the items on Paterson's behalf. Paterson stated that he only became dissatisfied with his investment when he learned that it fell through.

{¶23} Paterson argues that he could not ratify the disbursement of his funds here because he did not have full knowledge of the facts. Specifically, he argues that he did not know Sadlak forged his signature and had he known Sadlak "was in fact a common criminal * * * he would have instantly canceled the investment." Paterson's deposition testimony was not clear on this point, however, as he said he knew Sadlak was sending forms to Equity Trust on his behalf and just did not recall if Sadlak had told him he sent those items. More importantly, it is

irrelevant that Paterson did not know that Sadlak signed his name in order to accomplish the investment. Paterson's deposition testimony evidences the fact that he was fully aware of what the investment would entail as well as the fact that the investment occurred. He specifically testified that he wanted to invest $66,666.66 in Williamston and had no objection to the investment when he learned that it had occurred. The fact that Paterson was unhappy with the ultimate result of his investment has no bearing on the fact that he ratified Sadlak's acts. Paterson, therefore, did not set forth any evidence to demonstrate the existence of a genuine issue of material fact here. Equity Trust was entitled to summary judgment on the basis of ratification. Consequently, Paterson's third assignment of error is overruled.

III

**{¶24}** Paterson's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

      Costs taxed to Appellants.


                                                BETH WHITMORE
                                                FOR THE COURT


DICKINSON, J.
CONCURS

CARR, J.
DISSENTS


APPEARANCES:

NANCY C. SCHUSTER, Attorney at Law, for Appellants.

KENNETH A. BRAVO and ISAAC J. EDDINGTON, Attorneys at Law, for Appellee.