[Cite as *Koch v. Keystone Pointe Health & Rehab.*, 2012-Ohio-5817.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

ELLEN KOCH

      Appellant

      v.

KEYSTONE POINTE HEALTH &
REHABILITATION, et al.

      Appellees

C.A. No.     11CA010081

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    11CV172687

DECISION AND JOURNAL ENTRY

Dated: December 10, 2012

CARR, Judge.

{¶1}   Appellant Ellen Koch, administrator of the estate of Richard Kissinger, appeals the judgment of the Lorain County Court of Common Pleas that stayed the proceedings and compelled arbitration. This Court reverses and remands.

I.

{¶2}   In May 2009, Richard Kissinger appointed his son James Kissinger as his attorney in fact to, among other things, transact any and all business on his behalf. At the same time, he executed a health care power of attorney in which he named his wife as his agent and his children Ellen Koch and James Kissinger as alternate agents. Richard's wife predeceased him.

{¶3}   On May 25, 2010, Richard was transported by ambulance from a hospital to appellee nursing facility Keystone Pointe Health and Rehabilitation. His daughter-in-law and James' wife, Carla Kissinger, met him there. Richard was confused and not able to execute any admissions documents. Carla signed the nursing facility's admission agreement and a separate

arbitration agreement. The arbitration agreement stated that all disputes or claims regarding nonpayment may be adjudicated in a court of law unless both parties mutually agreed to arbitration. Any other disputes or claims, including "breach of contract * * *, negligence, medical malpractice, tort, breach of statutory duty, resident's rights, and any departures from accepted standards of care" must be settled by binding arbitration.

{¶4} After Richard's initial admission into Keystone, he received treatment on several occasions at Elyria Memorial Hospital, although he was always returned to Keystone. On the occasion of one return, James signed a re-admission agreement on behalf of Richard.

{¶5} On July 6, 2010, Richard suffered a fall at Keystone. He died on November 14, 2010. Ellen, as administrator of his estate, filed a complaint against Keystone, its parent company, and multiple unidentified employees, in which she alleged claims for wrongful death, a survivorship action, and the violation of the nursing home patient's bill of rights pursuant to R.C. 3721.17(I). In lieu of an answer, Keystone moved to stay the proceedings and compel arbitration. The administrator filed a brief in opposition and Keystone replied. The trial court granted Keystone's motion without analysis, stayed the proceedings, and ordered the matter to arbitration. The administrator appealed, raising one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS-APPELLEES'
MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION.

{¶6} Ms. Koch argues that the trial court erred by granting Keystone's motion to stay the proceedings and order the matter to arbitration. This Court agrees.

{¶7} We review a trial court's decision to stay proceedings and order the matter to arbitration for an abuse of discretion. *Giltner v. Mitchell*, 9th Dist. No. 21039, 2002-Ohio-5771,

¶ 11. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). That standard of review must yield when an issue of law is implicated. *See Tomovich v. USA Waterproofing & Found. Servs., Inc.*, 9th Dist. No. 07CA009150, 2007-Ohio-6214, ¶ 7. However, assuming the trial court granted the motion based on a finding of apparent authority, this Court has held that "[t]he existence of an agency relationship is a question of fact, rather than one of law." *Yusko v. Subichin*, 9th Dist. No. 21490, 2003-Ohio-7194, ¶ 16. Accordingly, we confine our review to whether the trial court abused its discretion by staying the matter and compelling arbitration.

{¶8} R.C. 2711.01(A) provides that "[a] provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

{¶9} As an initial matter, before a party may be bound by the terms of an arbitration agreement, there must in fact be a contract which requires the arbitration of the parties' disputes and claims. In this case, the parties agree that Richard Kissinger did not execute any agreements with Keystone on his own behalf. Instead, Keystone argued in its motion to compel arbitration that Richard's agent entered into the arbitration agreement on his behalf. After initially arguing that James executed the arbitration agreement, Keystone subsequently relied on agency law in support of its motion. Keystone posited two theories in that regard. First, the nursing facility

argued that Carla Kissinger was acting with apparent authority when she signed the admission and arbitration agreements. Second, Keystone argued that if Carla did not have apparent authority to execute the arbitration agreement, then James ratified her conduct by subsequently executing a re-admission agreement which purported to renew any prior arbitration agreement.

Apparent authority

{¶10} The Ohio Supreme Court held:

In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Master Consolidated Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570 (1991), syllabus. It is the acts of the principal, not the agent's acts, which implicate apparent authority. *Id.* at 576. However, "'[w]here a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform on behalf of his principal a particular act, such particular act having been performed the principal is estopped as against such innocent third person from denying the agent's authority to perform it.'" *Id.*, quoting *Gen. Cartage & Storage Co. v. Cox*, 74 Ohio St. 284, 294 (1906).

{¶11} In this case, Richard Kissinger appointed his son James as his attorney in fact and as one of his alternate agents in the document governing his health care power of attorney. He did not appoint Carla in either capacity. Moreover, he was confused upon his initial transfer from the hospital to Keystone, and there was no evidence that he informed anyone at Keystone that his daughter-in-law had the authority to act on his behalf. Accordingly, there is nothing to

indicate that Richard held Carla out to the public as having any authority to act on his behalf. Moreover, because of his confused state at the time of his admission, there is no evidence that Richard knowingly permitted Carla to act on his behalf.

{¶12} After Ms. Koch argued that no person with authority executed the arbitration agreement, Keystone changed its position and argued that Carla was acting with apparent authority of her husband James who had express authority to act on his father's behalf.

{¶13} In an affidavit attached to the administrator's brief in opposition to the motion to compel arbitration, Carla averred that she met Richard at the nursing home after he was transported by ambulance from a hospital. She averred that Keystone employees knew that she did not have power of attorney to act on behalf of her father-in-law, but they nevertheless asked her to sign the admission forms and told her that they would not admit Richard otherwise. Keystone did not dispute that it knew that Carla did not have power of attorney to act for Richard. In fact, in its motion to compel arbitration, Keystone simply implied that Carla and James were in fact the same person when it asserted that Richard "executed a Power of Attorney entrusting his son James 'Carla' Kissinger with his personal affairs." Only when Ms. Koch responded that James and Carla were two separate individuals did Keystone argue that Carla had apparent authority to sign the arbitration agreement.

{¶14} There was no evidence to indicate that James held his wife out to the public as possessing sufficient authority to assume James' role as Richard's attorney in fact or health care power of attorney. It is unknown why neither of Richard's children, who had authority to act on his behalf, met him at Keystone. Carla informed Keystone that she did not have power of attorney to act on Richard's behalf, but the nursing facility disregarded this fact and told her that it would not admit Richard if she did not sign the forms. Under these circumstances, there was

no evidence that Keystone acted in good faith having reason to believe that Carla had authority to enter into any contract on behalf of Richard. Keystone's demand that Carla sign the forms lest her father-in-law be denied admission for necessary rehabilitation did not create the apparent authority necessary for her to contractually bind Richard. Therefore, to the extent that the trial court premised its order granting the motion to compel arbitration on a finding that Carla had apparent authority to execute the arbitration agreement, such a finding was unreasonable.

Ratification

{¶15} "Ratification * * * [is] the approval by act, word, or conduct of that which was improperly done." *Paterson v. Equity Trust Co.*, 9th Dist. No. 11CA009993, 2012-Ohio-860, ¶ 21, quoting *AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*, 81 Ohio App.3d 217, 221 (9th Dist.1992). In other words, "[a] principal may ratify the unauthorized acts of his agent[.]" *Paterson* at ¶ 21. However, before ratification may occur, "the ratifying party must know what actions [he] is ratifying." *Wells Fargo Bank, N.A. v. Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, ¶ 13 (1st Dist.), citing *Lithograph Bldg. Co. v. Watt*, 96 Ohio St. 74, 86 (1917) ("before the principal can be held to ratify the unauthorized acts of his agent, it must appear that he had knowledge of all material facts"). "To establish ratification, it must be shown by conduct of the *principal*, done with full knowledge of the facts, which manifests his intention to ratify the unauthorized transaction." (Emphasis in original). *Meyer v. Klensch*, 114 Ohio App. 4, 6 (1st Dist.1961).

{¶16} Keystone did not argue that Richard did or said anything to indicate that he ratified Carla's execution of the arbitration agreement, and there is no evidence to indicate that Richard approved Carla's actions. Instead, Keystone argued that James ratified his wife's execution of the arbitration agreement when he subsequently executed a re-admission agreement

on behalf of his father. Carla averred in her affidavit that she never discussed the arbitration agreement she signed with either James or Ellen. James averred in his affidavit that his wife never discussed any of the forms she signed at the nursing facility and never told him about either the admission agreement or the arbitration agreement.

{¶17} James executed a re-admission agreement on one of the several occasions when Richard was returned to Keystone after hospitalization. The re-admission agreement noted that the parties had previously entered into a nursing facility agreement, but no date was noted in the space provided. The re-admission agreement further stated in relevant part: "1. The undersigned parties hereby enter into a Re-Admission Agreement under the same terms, conditions, and provisions as their above-referenced *Nursing Facility Agreement* except as modified as to the admission date in Paragraph 4 below. A copy of the Agreement is attached hereto and incorporated herein. 2. The parties hereby state that it is also their intention to renew any arbitration agreement that may have been incorporated by reference into the above-referenced *Nursing Facility Admission Agreement*." (Emphasis in original). The portion of Paragraph 4 referring to a re-admission date was left blank. Moreover, neither a copy of any prior admission agreement nor any arbitration agreement was attached to the re-admission agreement. The re-admission agreement was undated.

{¶18} Based on the only evidence before the trial court, there was nothing to indicate that James was aware that Carla had ever signed an arbitration agreement on Richard's behalf. Moreover, there was no evidence to indicate that James was even aware of the existence of any prior arbitration agreement, let alone the terms of such an agreement. Under these circumstances, to the extent that the trial court premised its order granting the motion to compel

arbitration on a finding that James ratified the arbitration agreement signed by Carla, such a finding was unreasonable.

**{¶19}** Based on the above analyses, no contract existed which bound the parties to arbitrate any disputes or claims. Therefore, the trial court erred by granting Keystone's motion to stay the proceedings and compel arbitration. The administrator's sole assignment of error is sustained.

III.

**{¶20}** Ms. Koch's sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,<br>and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
CONCURS.

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

MICHAEL D. GOLDSTEIN, Attorney at Law, for Appellant.

ERNEST W. AUCIELLO and SUSAN M. AUDEY, Attorneys at Law, for Appellees.