[Cite as *Templeman v. Kindred Healthcare, Inc.*, 2013-Ohio-3738.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99618

---

# DONALD TEMPLEMAN, EXECUTOR

### PLAINTIFF-APPELLEE

vs.

# KINDRED HEALTHCARE, INC., ET AL.

### DEFENDANTS-APPELLANTS

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-792299

**BEFORE:** Rocco, J., Jones, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 29, 2013

**ATTORNEYS FOR APPELLANT**

Paul W. McCartney
Jeffrey M. Hines
Jessica C. Pratt
Rendigs, Fry, Kiely & Dennis, L.L.P.
600 Vine Street
Suite 2650
Cincinnati, Ohio   45202

**ATTORNEYS FOR APPELLEE**

Susan E. Petersen
Todd Petersen
Petersen & Petersen, Inc.
428 South Street
Chardon, Ohio   44024

**FOR RAJESH AGARWAL, M.D., ET AL.**

Marc W. Groedel
Reminger Co., L.P.A.
101 West Prospect Avenue
Suite 1400
Cleveland, Ohio   44115

KENNETH A. ROCCO, J.:

{¶1} Pursuant to R.C. 2711.02(C), defendants-appellants Kindred Healthcare Inc., Kindred Healthcare Operating, Inc., Kindred Nursing Centers East, L.L.C., Greens Nursing and Assisted Living, L.L.C., and several of their employees[1] (hereinafter referred to collectively as "the Kindred defendants") appeal from the trial court order that denied their motion to stay the action brought against them by plaintiff-appellee Donald Templeman, Executor of the Estate of Willow Templeman, Deceased ("the estate").

{¶2} The Kindred defendants present two assignments of error. They argue that the trial court incorrectly determined that the arbitration clause Templeman signed on his mother's behalf did not apply to all of the estate's claims. They also argue, alternatively, that the trial court should have stayed the entire action until the estate's survivorship claims were resolved by arbitration.[2]

{¶3} Upon a review of the App.R. 9(B) record filed in the trial court, this court finds neither of the Kindred defendants' arguments has merit. The Kindred defendants' assignments of error, therefore, are overruled. For the reasons that follow, the trial court's order is affirmed in part and reversed in part, and this case is remanded for further proceedings consistent with this opinion.

---

[1] The doctor and his limited liability company who also were named as defendants in the complaint are not parties to this appeal.

[2] The estate has not filed a cross-appeal challenging the trial court's bifurcation of its claims.

{¶4} When the estate filed this action, it alleged that the Kindred defendants operated a skilled nursing and residential health care facility known as "The Greens." The estate alleged that, in September 2011, the Kindred defendants "were specifically put on notice of the below standard nursing patterns and practices" at that facility, but failed to take appropriate action. The estate alleged that its decedent was admitted there in October 2011, was negligently monitored and cared for, suffered an "untimely death" on November 10, 2011, and died as a proximate result of the Kindred defendants' negligence.

{¶5} The estate listed five causes of action: (1) negligence that caused its decedent physical and emotional distress; (2) negligent hiring and supervision that caused injury to the decedent; (3) wrongful death; (4) under the theory of respondent superior, violation of the rights granted to the decedent by R.C. 3721.13; and (5) malice justifying an award of punitive damages. The estate attached affidavits of merit as required by Civ.R. 10(D)(2).

{¶6} On January 16, 2013, after all of the named defendants filed answers to the complaint, the Kindred defendants filed a motion to stay the proceedings pursuant to "a valid agreement" for arbitration. The sole basis for the Kindred defendants' motion was their statement that Donald Templeman had signed this document upon the decedent's admission to the facility as the decedent's legal representative, therefore, it was legally binding and "inure[d] to the [Kindred defendants'] benefit."

**{¶7}** The Kindred defendants attached an incomplete copy of this agreement to their motion as "Exhibit A." "Exhibit A" is reproduced in this opinion in pertinent part as follows:

ATTACHMENT K

### ALTERNATIVE DISPUTE RESOLUTION AGREEMENT
### BETWEEN RESIDENT AND FACILITY (OPTIONAL)

This Alternative Dispute Resolution Agreement ("Agreement") is made and entered into this day * * * by and between 0792 - Kindred Transitional Care and Rehabilitation-The Greens ("Facility"), Willow Templeman, ("Resident"), and _____ ("Legal Representative").[3] The term "Resident" includes the Resident, his/her Guardian or Attorney in Fact, or any other person whose claim is derived through or on behalf of the Resident.

The parties wish to work together to resolve any disputes in a timely fashion and in a manner that minimizes both of their legal costs. Therefore, in consideration of the mutual promises contained in this Agreement, the Resident and Facility hereby agree as follows:

**A.** **Conduct of Alternative Dispute Resolution ("ADR").** The ADR process will be conducted by an independent impartial entity that is regularly engaged in providing mediation and arbitration services. DJS Administrative Services, Inc. * * * Louisville, KY * * * may serve as this independent entity. * * * Requests for ADR, regardless of the entity chosen * * * , shall be conducted in accordance with the Kindred Healthcare Alternative Dispute Resolution Rules of Procedure * * * .

---

[3]While the other portions of this sentence were typed, this space was blank.

**B.  Scope of ADR.**  Any and all claims or controversies arising out of or in any way relating to this Agreement or the Resident's stay at the Facility including disputes regarding the interpretation of this Agreement, * * * whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties (including, without limitation, any claim based on violation of rights, negligence, medical malpractice, any other departure from the accepted standards of health care or safety
* * * ), irrespective of the basis for the duty or of the legal theories upon which the claim is asserted, shall be submitted to alternative dispute resolution as described in this Agreement.  This Agreement includes claims against the Facility, its employees, agents, officers, * * * and/or its medical director.  Only disputes that would constitute  a legally cognizable cause of action in a court of law may be submitted * * *.  All claims based * * * on the same * * * or related course of care or services provided by facility to the Resident, shall be * * * arbitrated in one proceeding.  A claim shall be waived and forever barred if it arose prior to mediation and is not presented in the arbitration hearing.

* * *

[Subsections **C.** through **I.** missing][4]

* * *

**K.  Understanding of the Resident.  By signing this Agreement, the Resident is acknowledging that he/she understands the following: (1) he/she has the right to seek legal counsel concerning this Agreement; (2) the execution of this Agreement is not a precondition of admission or to the furnishing of services to the resident by the Facility, and the decision of whether to sign the Agreement is solely a matter for the Resident's determination without any influence; (3) this Agreement may not even be submitted to Resident for approval when Resident's condition prevents him/her from making a rational decision whether to agree; * * * (5) * * * if the parties are unable to reach settlement**
**\* \* \*, the dispute shall proceed to binding arbitration; and (6) agreeing to the ADR process * * * means that the parties are waiving their right to a trial in a court, * * * , and their right to appeal the decision of the arbitrator(s) in a court of law.**

---

[4]The estate subsequently attached a complete copy of this document to its opposition brief as an exhibit.

{¶8} The line for the "Signature of [Resident's] Legal Representative" on "Exhibit A" was filled out by Donald Templeman. However, Templeman did not include his "Printed Name & Authority Title," as the form required.

{¶9} Additionally, the Kindred defendants also attached to their motion a copy of what purported to be the decedent's "Durable Power of Attorney." The document indicated Donald Templeman was appointed on September 17, 1999. The document bore the signatures of two witnesses, one of whom was Donald Templeman, and also had a notary's seal and signature, but the attestation page contained neither a line for the name of nor the signature of the decedent.

{¶10} On January 30, 2013, the estate filed a brief in opposition to the Kindred defendants' motion for a stay. The estate argued that the ADR agreement was not enforceable for several reasons, in part because it was procedurally and substantively unconscionable.

{¶11} The estate argued, alternatively, that, even if the ADR agreement were valid, pursuant to *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, it could not apply to the wrongful death claim. The estate supported its argument with Donald Templeman's affidavit.

{¶12} Templeman averred that, on October 5, 2011, at the time the decedent first was to be admitted to the facility with a "tracheotomy tube after being hospitalized with respiratory issues," a representative of the Kindred defendants presented a "stack" of papers to him for his signature. He stated that: (1) the representative told him he "needed to execute the admission paperwork"; (2) he received no "additional explanation" about the paperwork; (3) he was "told where to sign in order to have his mother admitted"; (4)

the representative neither pointed out the arbitration agreement nor alluded to it; (5) his mother developed pneumonia and returned to the hospital on November 3, 2011; and (6) when his mother was "readmitted for a second stay" on November 8, 2011, he received no additional papers to sign and, again, none of the Kindred defendants mentioned the arbitration agreement. As previously stated, the decedent died on November 10, 2011.

{¶13} Templeman averred that he "had no idea" that he was signing a document either that he could refuse to sign or that limited his right to pursue claims if his mother was a victim of abuse or neglect. He also stated that he never received a copy of the "Kindred Healthcare Alternative Dispute Resolution Rules of Procedure."

{¶14} Templeman also attached a copy of those rules of procedure. The rules required, inter alia, that the written ADR agreement "should be knowing and voluntary," that it "must not be executed as a condition of admission," that the party's signature to it "must be witnessed by an individual who has been trained to explain the * * * process to consumers," and that it "must provide for a minimum of five (5) business days right of recission period during which the parties may have the agreement reviewed by counsel."

{¶15} On February 15, 2013, the trial court issued a journal entry that "denied" the Kindred defendants' motion to stay. The trial court stated that, pursuant to *Peters*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, the ADR agreement could not bind the decedent's beneficiaries to arbitrate their wrongful death claims. The court indicated

that the arbitration agreement signed by the decedent's power of attorney "governed only the decedent's claims," therefore, the "matter was to go forward."

{¶16} The Kindred defendants appeal from the foregoing order. They present two assignments of error.

**I.      The   trial   court   erred   to   the   prejudice   of Defendant-Appellants [sic] when it determined the parties' ADR Agreement is inapplicable and denied Defendant-Appellants' [sic] Motion to Stay.**

**II.      The   trial   court   erred   to   the   prejudice   of Defendant-Appellants [sic] when it failed to stay all claims pending arbitration of those subject to the parties' ADR Agreement.**

{¶17} The Kindred defendants argue in their first assignment of error that (1) the ADR agreement is "presumed valid"; (2) the decedent's "survival claims are subject to arbitration" under that agreement; (3) the parties' agreement applied to the decedent's "entire stay" at the facility; and (4) the trial court should not have considered issues of "unconscionability" because they had "no opportunity to investigate, conduct discovery on the issues, or even respond to them in writing."

{¶18} Prior to addressing the Kindred defendants' arguments, this court notes that they have attached to their appellate brief copies of documents that were not filed in the trial court. This court cannot consider the material. *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

{¶19} In addition, the Kindred defendants failed to raise the second and third arguments in the trial court; therefore, they have waived these arguments for purposes of

appeal. *Jacubenta v. Cadillac Ranch*, 8th Dist. Cuyahoga No. 98750, 2013-Ohio-586, ¶ 18; *Thompson v. Preferred Risk Mut. Ins. Co.*, 32 Ohio St.3d 340, 342, 513 N.E.2d 733 (1987).

{¶20} As a final preliminary matter, the Kindred defendants had the opportunity in the trial court to request additional time to either supplement their motion or respond to the estate's brief in opposition to their motion, but failed to do so. *Compare Hanson v. Valley View Nursing & Rehab. Ctr.*, 9th Dist. Summit No. 23001, 2006-Ohio-3815, ¶ 2. The Kindred defendants simply requested the trial court to grant their motion. Under these circumstances, the Kindred defendants invited the claim of error they make in their fourth argument. *Lester v. Luck*, 142 Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the syllabus.

{¶21} This court thus proceeds to determine whether the trial court correctly determined that the ADR agreement was enforceable against the estate. In *Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 99707, 2012-Ohio-2212, ¶ 8, this court recently set forth the applicable standard of review as follows:

> [T]he issue of *whether a party has agreed to submit an issue to arbitration* [and] questions of unconscionability are reviewed under a de novo standard of review. See *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005 Ohio 4391, 837 N.E.2d 393 (8th Dist.); *Taylor Bldg. Corp. Of Am. v. Benfield*, 117 Ohio St.3d 352, 2008 Ohio 938, 884 N.E.2d 12. (Emphasis added.) *Compare Koch v. Keystone Pointe Health & Rehab.*,

9th Dist. No. 11CA010081, 2012-Ohio-5817, ¶ 7 (applying an abuse-of-discretion standard).

**{¶22}** In *Koch* at ¶ 9-10, on similar facts as those presented in this case, the court aptly observed:

> [B]efore a party may be bound by the terms of an arbitration agreement, *there must in fact be a contract* which requires the arbitration of the parties' disputes and claims. In this case, the parties agree that *[the decedent] did not execute any agreements with Keystone on his own behalf.* Instead, Keystone argued in its motion to compel arbitration that [the decedent's] agent entered into the arbitration agreement on his behalf. * * * Keystone * * * relied on agency law.
>
> * * *
>
> The Ohio Supreme Court held:
>
> In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must *affirmatively show*: (1) that *the principal held the agent out* to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and *acting in good faith* had reason to believe and did believe that the agent possessed the necessary authority.
>
> *Master Consolidated Corp. v. BancOhio Natl. Bank*, 61 Ohio St. 3d 570, 575 N.E.2d 817 (1991), syllabus. It is the acts of the principal, not the agent's acts, which implicate apparent authority. *Id.* at 576. However, "'[w]here a principal has by his *voluntary act* placed an agent in such a situation that *a person of ordinary prudence*, *conversant with business usages, and the nature of the particular business, is justified* in assuming that such agent is authorized to perform on behalf of his principal *a particular act*, such particular act having been performed the principal is estopped as against such *innocent* third person from denying the agent's authority to perform it.'" *Id.*, quoting *Gen. Cartage & Storage Co. v. Cox*, 74 Ohio St. 284, 294, 78 N.E. 371, 4 Ohio L. Rep. 60 (1906). (Emphasis added.)

**{¶23}** In this case, the competent evidence presented to the trial court demonstrated that, when exchanges related to business matters, the Kindred defendants dealt only with Donald Templeman. The decedent herself neither acted nor held her son out as her representative.

**{¶24}** As evidenced by the ADR form and the "Kindred Alternative Dispute Resolution Rules of Procedure," the Kindred defendants were conversant with both the usages and the nature of the businesses of providing rehabilitative nursing health care and compelling alternative dispute resolutions. The Kindred defendants must have been aware, therefore, that pursuant to R.C. 1337.12 and R.C. 1337.13, a power of attorney for health care is a specialized document.

**{¶25}** Nevertheless, when the Kindred defendants presented Templeman with a "stack" of papers and "told" him to sign them on his mother's behalf upon her admission to the facility, they did not rely on such a document. Instead, they relied on a copy of a "durable power of attorney," purportedly given to Templeman from the decedent, but that, despite the notary's attestation, did not contain the *decedent's* signature, as required by statute. R.C. 1337.06 ("A power of attorney for * * * the transaction of business * * * , in order to be admitted to record as provided in section 1337.07 of the Revised Code, shall be signed [by the grantor] and acknowledged in the same manner as deeds and mortgages * * * ."); R.C. 1337.25 ("A power of attorney must be signed by the principal * * * ."). Neither did it indicate that Templeman's authority to act on his mother's behalf, if any, extended to her health care as required by R.C. 1337.12 and 1337.13.

**{¶26}** In addition, in spite of what the Kindred defendants' form specifically required, none of the Kindred defendants required of Templeman that he provide his "Printed Name & Authority" to sign the ADR agreement on his mother's behalf. This case, therefore, compels the same conclusion reached by the court in *Koch,* 9th Dist. Summit No. 11CA010081, 2012-Ohio-5817, which, with substitutions of wording based upon the facts of the instant case, noted at ¶ 14-19 as follows:

> * * * [The defendants] did not [receive a valid power of attorney] to act on [the decedent's] behalf, but the nursing facility disregarded this fact and told [the decedent's son] that it would not admit [the decedent] if [he] did not sign the forms. Under these circumstances, there was no evidence that [the defendants] acted in good faith having reason to believe that [the son] had authority to enter into any contract on behalf of [the decedent]. [Defendants'] demand that [the son] sign the forms [or his mother would] be denied admission for necessary rehabilitation did not create the apparent authority necessary * * * . Therefore, to the extent that the trial court premised its order granting the motion to compel arbitration on a finding [of] apparent authority to execute the arbitration agreement, such a finding was unreasonable.
>
> Ratification
>
> "Ratification * * * [is] the approval by act, word, or conduct of that which was improperly done." *Paterson v. Equity Trust Co.*, 9th Dist. No.

11CA009993, 2012-Ohio-860, ¶ 21, quoting *AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*, 81 Ohio App.3d 217, 221, 610 N.E.2d 1032 (9th Dist.1992). In other words, "[a] principal may ratify the unauthorized acts of his agent[.]" *Paterson* at ¶ 21. However, before ratification may occur, "the ratifying party must know what actions [he] is ratifying." *Wells Fargo Bank, N.A. v. Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, ¶ 13, 897 N.E.2d 722 (1st Dist.), citing *Lithograph Bldg. Co. v. Watt*, 96 Ohio St. 74, 86, 117 N.E. 25 (1917) ("before the principal can be held to ratify the unauthorized acts of his agent, it must appear that he had knowledge of all material facts"). "To establish ratification, it must be shown by conduct of the *principal*, done with full knowledge of the facts, which manifests his intention to ratify the unauthorized transaction." (Emphasis in original). *Meyer v. Klensch*, 114 Ohio App. 4, 6, 175 N.E.2d 870 (1st Dist.1961).

* * *

Based on the only evidence before the trial court, there was nothing to indicate that [the decedent] was even aware of the existence of any * * * arbitration agreement, let alone the terms of such an agreement. Under these circumstances, to the extent that the trial court premised its order granting the motion to compel arbitration on a finding that [the decedent] ratified the arbitration agreement signed by [her son], such a finding was unreasonable.

Based on the above analyses, no contract existed which bound the parties to arbitrate any disputes or claims. Therefore, the trial court erred by granting [the defendants'] motion to stay the proceedings and compel arbitration.

{¶27} Because the record presented to the trial court fails to reflect that a valid ADR agreement existed between the Kindred defendants and the decedent, the trial court correctly denied the Kindred

defendants' R.C. 2711.02 motion to stay the proceedings. *Compare Vogt v. Indianspring of Oakey*, 1st Dist. Hamilton No. C-110864, 2012-Ohio-4124 (executor–decedent's representative did not show she lacked valid authority to sign ADR agreement on her decedent's behalf). Accordingly, the Kindred defendants' first assignment of error is overruled.

{¶28} However, for that same reason, the trial court erred in separating the estate's survivorship claims from that ruling. Without a valid ADR agreement in existence, *none* of the estate's claims was subject to arbitration. This disposition renders the argument the Kindred defendants make in their second assignment of error meritless. Consequently, their second assignment of error also is overruled.

{¶29} Therefore, although the trial court's order is affirmed in part, it is also reversed in part, and this case is remanded for further proceedings consistent with this opinion.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

LARRY A. JONES, SR., P.J., and

MARY EILEEN KILBANE, J., CONCUR